WALTER S. ATWOOD, JR., *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A city ordinance required the operators of street-railway cars to reduce their speed to four miles per hour "when crossing intersecting streets." *Held:*—

1. That the ordinance, being penal in its nature, ought to be construed strictly.

2. That a street which merely opened into but did not continue on beyond another, did not "intersect" the latter within the meaning of the ordinance.

3. That two or more streets could not be said to be "intersecting," unless some portion at least of the roadway at the supposed crossing was common to each of them.

The parties being at issue as to the rate of speed at which the defendant's street-car was running before it collided with the hack occupied by the injured plaintiff, the trial court in charging the jury as to the respective claims of the parties, incidentally said that it was "always a difficult thing to prove at what rate of speed a car is moving." *Held* that there was no impropriety in thus calling the attention of the jury to what was obviously a commonly known fact.

In this connection the jury were instructed that in drawing their inference or conclusion as to the speed of the car, based upon the time in which it was said to have passed over a certain distance, they ought to be "convinced" or "satisfied" that the time and distance were in fact accurately computed. *Held* that this did not place upon the plaintiff the burden of proving the speed of the car by demonstrative and conclusive evidence, but was merely a suggestion that unless the data upon which the conclusion was based were established by the evidence, the conclusion itself would not be reliable; especially as the jury were repeatedly instructed that the plaintiff was only required to prove his case by a preponderance of the evidence.

The defendant claimed that when the car was close upon the hack the hackman turned directly in front of it, and that he was solely responsible for the collision. With respect to this claim the jury were told, in effect, that if the collision was thus caused, the motorman doing all he could to avoid it, the defendant would not be liable. *Held* that this instruction was proper, and not open to objection as laying down a false standard of duty on the part of the motorman.

A plaintiff who seeks damages for a severe nervous shock resulting from

a collision, may properly be asked as to his previous condition of health and as to his habits in the use of alcohol and morphine; and the question as to how far back such inquiry may extend, is one for the determination of the trial court in the exercise of its judicial discretion.

The admission of evidence touching the subject of damages, even if erroneous, is harmless, if the jury do not reach that question.

Submitted on briefs November 2d—decided December 17th, 1909.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Bennett, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

*John H. Cassidy,* for the appellant (plaintiff).

*John P. Kellogg* and *Joseph F. Berry,* for the appellee (defendant).

THAYER, J. The defendant operates a line of trolley-cars upon a double track railway through East Main Street in Waterbury. That street extends in an easterly and westerly direction. Phœnix Avenue joins it from the north, and extends in an approximate northerly and southerly direction. Brook Street joins it from the south, and extends in an approximate northerly and southerly direction. Phœnix Avenue does not continue directly across East Main Street to Brook Street, and the course of the latter street does not continue into Phœnix Avenue, but each ends at East Main Street. The easterly line of Phœnix Avenue where it joins East Main Street is nineteen feet from the westerly line of Brook Street measured in the northerly line of East Main Street, and twenty-nine and one half feet measured in the southerly line. The northerly or west-bound track of the defendant's railway is nineteen feet from the curb of East Main Street at the corner of Phœnix Avenue.

At the time of his claimed injury the plaintiff was the occupant of a public hack, which was being driven from Phœnix Avenue southerly across East Main Street with the intention of crossing that street and going to a stable located thereon at the corner of Brook Street. One of the defendant's cars, which was proceeding westerly along its northerly track, struck the hack with such force as to throw the plaintiff across the hack and against the opposite side so as to crack one of his ribs, bruise his knees, and seriously shock his nervous system.

The plaintiff claimed to have proved that the collision was due to the negligence of the defendant's motorman in operating the car at a dangerous and unreasonable speed, in operating it in violation of a city ordinance which provided that no car should be propelled in the public streets at a faster speed than eight miles an hour, and in failing to comply with another ordinance which provided that the speed of cars be slackened to four miles per hour when crossing all intersecting streets, and that the gong should be struck at least three times within fifty feet of each crossing. There were other claims, unnecessary to be here stated. The question of contributory negligence was in effect removed from the case by an instruction in the plaintiff's favor. The substantial issues between the parties were whether the defendant or its motorman were negligent in either of the respects mentioned.

The plaintiff claimed that Phœnix Avenue and Brook Street constituted one street intersecting East Main Street, and that the motorman failed to slow down to four miles per hour, and sound the gong, as required by the city ordinance; and requested the court to instruct the jury that "to be intersecting, it is not necessary that the streets should continue directly across, but if the course of one street runs into the course of another street on the other side of the street intersected, there is an intersection. In this case the jury should determine whether Phœnix

Avenue and its continuation, Brook Street, intersected East Main Street." The court did not give this request, but charged the jury that "it is not necessary that Phœnix Avenue and Brook Street should cross East Main Street directly, or should continue at right angles to it, or that the lines of the street should be continuous one to the other in order to constitute or make them constitute a street intersecting East Main Street, but they should be so laid out that they constitute a continuous line of traffic. East Main Street, of course, is a continuous highway. Phœnix Avenue and Brook Street, in order to make them a continuous highway or intersecting street, should be so adapted that there can be a continuous line of traffic upon them, and as I have said, after examining the map and considering the evidence concerning the streets, I think that I, under the undisputed evidence, should charge you that Phœnix Avenue and Brook Street do not form an intersecting street, intersecting East Main Street."

The plaintiff assigns as error both the refusal to charge as requested, and the charge as given. The evidence as to the situation of the streets was undisputed. The plaintiff had introduced as evidence the map mentioned in the charge, and which is before us as a part of the record. From the map and finding it appears that in passing from Phœnix Avenue to and through Brook Street, traffic must pass for a distance of more than nineteen feet, longitudinally, over a portion of East Main Street, no part of which is included within the lines, if produced, of either of the other streets. While so passing through East Main Street, it is as effectively outside the limits of Phœnix Avenue and Brook Street as it would be if the lines of those streets where they join East Main Street were a mile apart. Two streets so situated with respect to a third cannot constitute one continuous street intersecting the latter. The plaintiff, therefore, was not entitled to the charge requested, and, had it been given, a verdict rendered in his

favor upon this point would have been without evidence to support it, and liable to be set aside upon that ground. For the same reason the plaintiff cannot complain of the charge as given.

The court also charged the jury that "East Main Street and Phœnix Avenue taken alone, . . . or rather taking those two streets together, are not intersecting streets within the meaning of the ordinance in question." This also is assigned for error, but the point has not been pursued in the plaintiff's brief upon which the case has been submitted.

At first blush it presents a question of more doubt than the one which has already been considered. But we think that the instruction was correct. The ordinance provides that the speed of "all cars must be slackened to four miles per hour when crossing all intersecting streets." Can it be said that the cars, in passing over the west-bound track, which is found to be nineteen feet from the curb of East Main Street at the point where Phœnix Avenue joins it, cross an intersecting street? Ordinarily we do not speak of a street which starts from or terminates in another, as intersecting it. It is only when it crosses or cuts through the other that it is said to intersect it, and that the streets are said to be intersecting streets. Otherwise it is said to extend to or from the street in which it terminates. "Intersect" ordinarily means to cross; literally to cut into or between. *State* v. *New Haven & N. Co.*, 45 Conn. 331, 344. To the same effect are the definitions given in the dictionaries. While some occasion for such an ordinance as the one in question might exist where a street merely terminates at that through which the railway is operated, the necessity for it is much less in such a case than it is where the street actually crosses the other. In the latter case there is likely to be more traffic in the intersecting street, and the through traffic would be directly across the railway tracks. In the former case, if the law of the road is

obeyed, only a portion of the traffic passing from one street into the other will cross the tracks, and travel turning from one street into another is apt to be at less speed, and to be accompanied with more caution, than direct travel across an intersecting street. The ordinance relates only to cars "crossing an intersecting street." Being in its nature penal, the ordinance is to be strictly construed. We think that Phœnix Avenue did not extend across East Main Street, and consequently that the cars running upon the tracks in the middle of that street did not, in passing Phœnix Avenue, cross an intersecting street within the intent and meaning of the statute.

In one part of the charge the court remarked to the jury that "it is always a difficult thing to prove at what rate of speed a car is moving." It is claimed that in this remark the court passed beyond the limit of proper comment on the question of speed. While conceding in his brief that "it may require some judgment to testify that a car was going at so many miles an hour," the plaintiff contends that it is a matter of no difficulty to prove that a car is going at an unreasonable or dangerous rate of speed. It was in connection with the plaintiff's claim that the speed of the car was in excess of eight miles per hour, and so in excess of the rate permitted by the city ordinance, and as an introduction to what he was about to say in connection with that claim, that the court made the comment now complained of. That it is difficult to prove the exact speed at which a car is moving is undoubtedly true. There was no impropriety in calling the attention of the jury to that fact before proceeding, as the court at once did, to comment upon the evidence which had been introduced bearing upon the speed of the car, and whether it was in excess of eight miles per hour.

In commenting upon this testimony the court used the following language: "All argument or considerations as to the rate of speed which you derive from the time in which

the car moved from one place to another must be, in order to be conclusive, at least based upon some accurate proof to you of the time the car actually took to move that distance. If you find from the evidence that the car actually took two seconds to move from one place to another, then you could accurately compute the rapidity with which the car went between those two points, but you must be able to find that two seconds was in fact the time occupied to pass between those two points."

The plaintiff complains of this as laying down a rule of evidence, and as placing upon him the burden of proving his case by demonstrative evidence. But the court did not instruct the jury that he must prove the speed of the car by conclusive evidence. Where evidence is offered tending to prove that a car occupied two seconds in passing between two points, and the jurors are asked therefrom to draw an inference as to the speed per hour of the car, if the points and the distance between them and the time are accurately determined, a conclusive inference as to the speed can be drawn. But it was proper to suggest to the jurors, in aiding them in considering the testimony, that a conclusive inference could not be drawn unless the facts themselves were accurately proven. This is all that the court did in the language complained of. The jury were repeatedly told during the charge that the plaintiff was required to prove his facts by a preponderance of the evidence, and must have understood in the part of the charge now considered that the plaintiff was required to prove, by only a fair preponderance of the evidence, the facts from which the inference as to the speed of the car was to be drawn.

In the same connection the plaintiff calls attention to the fact that the court used such expressions as that the jury must be "satisfied," and "convinced," as showing that a wrong rule as to the amount of proof required of the plaintiff was laid down. But it appears from an examination of the charge that these expressions were not used

as stating a rule as to the amount of proof required to establish the plaintiff's case, but in explaining to the jury that before they gave weight to the testimony of a witness giving an opinion as to the speed of the car, they should be satisfied or convinced that the position of the witness at the time was such as enabled him to form an opinion upon the subject. This was entirely proper comment, and could not have been misleading to the jury in the way claimed by the plaintiff.

The portions of the charge complained of in the eighth and ninth assignments of error are not open to the objection urged against them, which is that a false standard of duty on the part of the motorman is laid down; that the element of speed and the fact that the accident may have occurred by a combination of negligence and accident are ignored. The defendant's claim was that when the car was close upon the hack the hackman turned directly in front of the car, and that he was solely responsible for the collision. The instruction complained of related to this claim, and in effect told the jury that if the collision was thus caused, the motorman doing all that he was able to avoid it, the defendant would not be liable.

Upon the cross-examination of the plaintiff, who claimed to be suffering from severe nervous shock as the result of the collision, he was asked as to his previous condition of health. Having stated that for a year before the accident he had never been better in his life, he was asked whether previous to that time his health had been good, and also whether he had not suffered from a break down due to the morphine and alcohol habits. This line of inquiry was objected to as too remote. It is now contended that the evidence was irrelevant and immaterial. The question of remoteness was for the court. It was within its discretion to determine the limit of time beyond which inquiry as to the plaintiff's physical and nervous condition should not be made. The plaintiff's condition in these respects,

prior to the time of the collision, was admissible upon the question of damages. The objections to the testimony were therefore properly overruled. As the jury did not reach the question of damages, the admission of the testimony was harmless, had it been erroneous.

There is no error.

In this opinion the other judges concurred.