Edward Jackiewicz, P. P. A. vs. The United Illuminating Company.

Third Judicial District, New Haven, January Term, 1927.

Wheeler, C. J., Curtis, Maltbie, Haines and Hinman, Js.

The plaintiff, a boy three and one half years old, picked up the end of a broken electric wire, belonging to the defendant, and was severely burned. In an action to recover damages for his injuries, the trial court stated to the jury his claim of fact, contested by the defendant, that at the point where the wire parted, it had passed close to the branches of a tree, and then added: "and this being so, it was undoubtedly the duty of the defendant company to inspect these wires for the purpose of avoiding danger of abrasion and breaking by coming in contact with the limbs of the tree. . . ." *Held* that the phrase, "this being so," immediately following the recital of the plaintiff's claim, could not be interpreted as a mere conditional statement and equivalent to, "if this is so," but must be regarded, especially in view of two other similar references to the same issue, as a definite assumption that the claim was true in fact and must so be found by the jury; and that, so construed, the charge was prejudicial to the defendant.

The trial court correctly charged the jury that the defendant must exercise "a very high degree of care in the construction and operation of the appliances by means of which the current is conducted," but its further instruction, that this involved the "duty to inspect those wires as often as would reasonably be required to enable it to be fully aware at all times of their condition," imposed upon the defendant a practically impossible burden and was, therefore, erroneous.

An alleged error in the charge cannot be considered by this court, where the facts claimed to have been proved by the appellant, relating to the question involved and necessary for its determination, do not appear in the finding.

The reiteration by the trial court of the high degree of care required of the defendant, though carried to an unnecessary extent, was not harmful error.

In an action for permanent injuries, the plaintiff's expectancy of life is relevant upon the question of damages, and it may best be established by the testimony of a qualified witness based upon mortality tables of recognized authority.

It is within the trial court's discretion to admit evidence of measurements made four months after the accident, upon the promise of counsel that proof will be offered showing that, in the interim, conditions remained substantially unchanged.

A photograph identified as a fair representation of the *locus* of the accident is admissible within the trial court's discretion, to show the general location of the objects portrayed upon it.

An objection to evidence, not advanced in the trial court, cannot be raised in this court upon appeal.

A written report made by a witness at the time of an accident is not admissible in evidence unless he testifies that he has no present recollection of the matter contained in it but that, at some former time, he had knowledge of the facts stated therein, and that they are correct.

Argued January 18th—decided June 28th, 1927.

ACTION to recover damages for personal injuries, alleged to have been caused by the defendant's negligence, brought to the Superior Court in Fairfield County and tried to the jury before *Marvin, J.;* verdict and judgment for the plaintiff for $7,500, and appeal by the defendant. *Error and new trial ordered.*

*Carl Foster,* for the appellant (defendant).

*Samuel Reich,* with whom, on the brief, was *Philip Reich,* for the appellee (plaintiff).

WHEELER, C. J.   The denial of the motion to set aside the verdict was right.   There is, upon the evidence, no reasonable basis for the conclusion that the plaintiff, a child of three and one half years, contributed materially to the injuries he suffered, and the negligence of the defendant was a question of fact which the jury might reasonably have resolved against the defendant.

Errors in the instruction to the jury are pursued in

brief and argument in several particulars, which we will now take up, giving, first, a brief statement of the facts in issue sufficient to make understandable the conflicting claims of the parties as to these assignments of error.

The plaintiff offered evidence to prove these facts: The electric wires of the defendant, which were strung over a public street in Fairfield, at the time of the accident and for a long time prior thereto rubbed against and came in contact with the branches of certain poplar trees. As a result of this contact the wire carrying twenty-three hundred volts broke, and the two ends fell to the ground directly in front of the house in which the plaintiff was living. Shortly thereafter the plaintiff took hold of the end of one of these broken wires, and as a consequence was very severely burned, and suffered permanent injuries which will seriously interfere with his ability, later in life, to perform the functions required, in many activities of a business and personal character. The portion of the wire found in the plaintiff's hand was bare copper, un-insulated and unprotected. There was no controversy as to the fact or extent of the plaintiff's injuries.

The defendant offered evidence to prove that it did not maintain its wires in contact with the trees or the branches thereof upon this street, but that a high wind caused the limbs and branches of one of these trees to bend and sway and come in contact with the wires maintained by defendant and in consequence a wire broke and the ends fell to the ground. The defendant further claimed to have proved that the Public Utilities Commission of the State, prior to this accident, had made a rule requiring each utility, including defendant, in the spring and fall of each year to make inspection "of all of its overhead plant, lines, devices and appliances by means of which it conveys or trans-

mits electrical energy," and that it had complied with this rule and inspected on May 7th, May 8th, and June 1st, preceding the accident, the wire which broke, and at the time of these inspections the wire was not in contact with any branch or limb of any tree, and at no time prior to the breaking of the wire did defendant know that the wire was in a state of disrepair.

The court charged the jury: "It is the plaintiff's claim that at the point where this wire was broken the defendant's wires passed close to the branches of this tree, and this being so, it was undoubtedly the duty of the defendant company to inspect these wires for the purpose of avoiding danger of abrasion and breaking by coming in contact with the limbs of the tree, and to make such inspection as often as would be reasonably required to perform its duty to exercise a high degree of care in the maintenance of its high voltage wires."

The defendant controverted plaintiff's claim that its wires passed close to the branches of the tree and it interprets the court's statement, "this being so," as assuming the plaintiff's claim to be a fact, and that upon this assumption of fact the court states the duty of inspection of defendant. If this instruction upon this subject stood alone, we should think it might fairly be understood as a conditional statement, if this is so, —that is, if the plaintiff's claim is so. We do not, however, feel certain of such an interpretation as we read the rest of the charge upon this subject-matter and find that the court twice asserts the plaintiff's claim in this particular as a fact in the case. Thus we find the jury instructed: "And where, as appears in this case, wires are adjacent to branches of a tree which may rub against the wire and cause it to break, inspection should have been made at frequent intervals in order to ascertain whether such abrasion was actu-

ally taking place." Here is a definite assumption as a fact that the branches of the tree rubbed against this wire and caused it to break. Following this the court says: "The defendant, therefore, is chargeable with knowledge of the fact that the wires were running through the branches of the tree; and, if you find that it was in fact true that the branches of the tree, or a branch of the tree had been rubbing against the wire for some time previous to the date on which the wire fell, it is for you to determine whether or not that condition had prevailed for so long a time and so openly that the defendant is chargeable with knowledge," etc.

We are of the opinion that, under this charge, the jury would have understood the court to say that the wires were run through the branches of the tree which may have rubbed against the wire and caused it to break. The question of fact as to whether the wire did run through the branches of the tree, which may have rubbed against the wire, which was a controverted fact, was thus practically taken from the jury. The court was in error in assuming the existence of a much controverted fact, and we cannot hold this error to have been harmless. Further the court charged: "In view of the very high degree of care . . . required of the defendant in the construction and maintenance of its electric wires, it was the defendant's duty to inspect those wires as often as would reasonably be required . . . to enable it to be fully aware at all times of the condition of those wires." There was no duty imposed upon this defendant utility to inspect these wires so as "to enable it to be fully aware at all times of the condition of those wires." The trial court was correct in imposing upon this utility the "duty of using a very high degree of care in the construction and operation of the appliances by means of which the

current is conducted, requiring the corporation to employ every reasonable precaution known to those possessed of the knowledge and skill requisite for the safe treatment of such an agency for providing against all the dangers incident to its use, and holds it liable for the injury of any person due to the neglect of that duty." Under the exercise of this very high degree of care, the defendant would not have been obliged to inspect these wires so frequently as to be at all times aware of their condition. This would impose, practically, an impossible burden, for no large utility furnishing light and power could possibly inspect its wires to that extent over a large mileage of wires, since this would call for an almost continuous inspection over all of its wires all of the time. The charge in this particular was erroneous and harmful.

One other instruction defendant attacks in argument: "This produced a burning of the insulation, so-called, and of the wire as well." Defendant claims that the evidence it offered tended to prove that the insulation was not burned, and in fact the covering of the wires was not an insulation but merely for protection from the weather. The statement of the evidence defendant offered, as found in the finding, contains nothing as to the subject of the insulation of these wires. We therefore cannot consider this ground of alleged error. Defendant strenuously contends that the court's repetition of the standard of duty of the defendant as a very high degree of care so overemphasized the point as to be error. The reiteration to such an extent was certainly unnecessary; we cannot hold it to have been harmful error. It was the repetition each time of the correct standard, save in the instances to which we have referred.

We turn now to the rulings on evidence. Plaintiff offered to prove, by a qualified witness, the expectancy

of life of the plaintiff from the American Mortality Tables, for the purpose of showing the length of life of the plaintiff during which he will suffer from the permanent injuries for which he sues, and to show how and for what period the earning capacity of the plaintiff will be affected. Defendant's counsel objected to this offer as irrelevant. The court properly admitted the evidence. It would be impossible to determine the period the plaintiff would suffer from the effects of the injury, nor the length of time he would lose in his capacity to earn unless the probable duration of the plaintiff's life was known. The method adopted by the plaintiff of proving this was the customary one and the best method thus far found for establishing this fact.

A witness was asked as to certain measurements. The question was objected to by the defendant upon the ground that they were taken or estimated four months after the accident. It was admitted upon the promise of plaintiff's counsel to show later that the conditions at the time the measurements had been taken had remained substantially the same as at the time of the accident. This ruling was within the court's discretion. The finding does not state that this connection was not made, and we must assume that it was made, nor does it state that defendant at any time moved to strike out the evidence thus conditionally admitted. The court ordered a part of a photograph to be severed from the rest of it. A witness having testified that the mutilated photograph was a fair reproduction of the general conditions it portrayed, the court admitted it in evidence over defendant's objection for the purpose of showing the general location of the objects portrayed upon it. The finding does not indicate the ground of the objection; none occurs to us which would have been tenable in

view of the identification of the *locus* represented in the photograph. The course taken by the court was well within its discretion. The plaintiff called as a witness one Mealia; he having testified that his house is about a mile and a half from the place of the accident, was inquired of, "Are the weather conditions at your house where these observations are made substantially as they are in the locality which we are speaking of?" The witness's qualifications having been established, the court admitted the question over defendant's objection. Defendant's counsel now urges that the witness was not qualified to answer unless the weather conditions were practically the same at both points. No such objection having been made on the trial, it is too late to urge it now. So far as the finding discloses, the question was both relevant and material. The defendant produced as a witness in chief one Brammer, its inspector, who testified that two sheets of paper handed him was his report upon this accident which he turned in to his employer, the defendant. Counsel for the defendant offered this report, first to corroborate the witness's recollection, and second, as further corroboration that the company complied with the law and rules of the Public Utilities Commission.

We cannot consider the second ground, for the reason that we are not referred in the finding to such rules. Upon the first ground, the report was only admissible when it appears that the witness has no recollection of the matter contained in it upon inspection, but testifies that at some former time he had knowledge of the facts it states, and that they are correct. The finding does not bring, or attempt to bring, the offer within the rule relating to proof of matters of past recollection. *Neff* v. *Neff,* 96 Conn. 273, 114 Atl. 126. There was so far as the finding shows no error in this ruling.

There is error, the judgment is set aside, and a new trial is ordered.

In this opinion the other judges concurred.