## Joseph Delfino v. Warners Motor Express

Inglis, C. J., Baldwin, O'Sullivan, Wynne and Daly, Js.

Argued April 5—decided May 3, 1955

*Charles R. Covert,* with whom were *H. Mefford Runyon* and, on the brief, *P. Lawrence Epifanio,* for the appellant (plaintiff).

*Paul C. Jamieson,* with whom was *Robert M. McAnerney,* for the appellee (defendant).

DALY, J. The plaintiff brought this action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, acting through its agents and servants. The case was tried to a jury. Judgment was rendered upon a verdict for the defendant. The plaintiff has appealed.

The plaintiff, in and by nine of his assignments of error, seeks to have twelve corrections made to the finding. The finding in a case tried to the jury is merely a narrative of the facts claimed to have been proved on either side, made for the purpose of fairly presenting any claimed errors in the charge or rulings of the court. It will not be corrected merely to secure a meticulous accuracy as to details. *Orico* v. *Williams,* 139 Conn. 714, 716, 97 A.2d 556; *Brown* v. *Goodwin,* 110 Conn. 217, 218, 147 A. 673. As the corrections sought are immaterial to the decision of any question of law raised on the appeal, they are not reasonably necessary to fairly present the claimed errors in the charge or rulings and will not be made. *Fierberg* v. *Whitcomb,* 119 Conn. 390, 392, 177 A. 135; *Marks* v. *Dorkin,* 104 Conn.

660, 662, 133 A. 915; Maltbie, Conn. App. Proc., § 85.

The plaintiff claimed to have proved these facts: On the night of February 19, 1946, at about 10:30 p.m., he was operating his automobile in a westerly direction on the Boston Post Road in the town of Greenwich. Very heavy, dense, clinging and freezing snow was falling at the time, and the road was covered with snow. The snow had been falling for several hours and traveling conditions were bad. The plaintiff was driving between twenty-five and thirty miles per hour, with his lights on and his windshield wiper working, and in the exercise of reasonable care. The defendant's agents and servants had negligently parked its truck in the westbound lane of the traveled portion of the highway, although there were shoulders on which it could have been parked. The defendant's truck was a large 34,000-pound box-car type tractor-trailer truck which was required to have taillights, reflectors and flares or other emergency lighting equipment. The defendant's agents and servants failed to set any flares or other emergency lighting equipment or, if any were set, they were not placed so as to be visible to vehicles approaching from the rear. The taillights on the truck were not lighted or, if they were, the defendant's agents had negligently permitted them to become obscured by the clinging snow. The defendant's truck was not equipped with reflectors or, if it was, the defendant's agents had negligently and carelessly permitted the falling snow to cover and obscure them. After the truck had been parked for more than ten minutes, the plaintiff came upon it suddenly, and although he tried to turn out and avoid striking it he was unable to do so. As a result of the accident, the plaintiff hit his head against the car door, broke his glasses, suffered body bruises and

sustained a cerebral concussion. His car was damaged. He developed nervous disorders as a consequence of his injuries.

The defendant claimed to have proved these facts: Its truck had been proceeding in a westerly direction on the highway until the snowfall prevented it from proceeding further. The drivers of the truck parked it on the extreme right-hand side of the highway so that one-half of the truck was completely off the highway. It was equipped with five lights in the rear and two reflectors. The lights on it were fully lighted at the time of the accident. The truck was parked directly under a street light which illuminated it. The street lighting at the point of the collision was very bright. After they had parked the truck, the drivers set out flares in front and in the rear of it, the rear flare being between thirty and fifty feet from the back of the truck. The drivers then entered the cab of the truck to await the coming of a snow plow. After a period of time, they felt a jar and upon investigation saw the plaintiff and his automobile. Immediately after the accident, the plaintiff's car was parked on the left side of the truck. The plaintiff said he was not hurt and that he was in a hurry, and he thereupon proceeded on his way. Shortly after the accident, the snow plow passed the defendant's truck without mishap. Any psychotic condition claimed by the plaintiff was not a result of the collision.

The defendant's answer contains two defenses: a denial of the alleged negligence of the operators of its truck and contributory negligence on the part of the plaintiff. One of the specifications of contributory negligence was that the plaintiff failed to maintain a proper lookout. In charging the jury with respect to this specification, the trial court read to

them § 2432 of the General Statutes[1] and instructed them that it was for them to determine whether that statute had been violated and whether such violation, if it occurred, was a substantial factor in producing injuries to the plaintiff, and that, if the statute was violated and its violation was a substantial factor in producing the injuries to the plaintiff, he could not recover. The plaintiff claims that the court erred in so charging the jury.

The jury returned a general verdict. No interrogatories were propounded. The plaintiff does not claim that the court erred in charging on the issues raised by the defendant's denial of negligence on the part of its agents. The general verdict could well have been predicated on a finding that the defendant's agents were not negligent. As there are two separate and distinct defenses, the general verdict should be sustained if the charge on one of them is correct, regardless of the correctness of the instructions as to the other. *Ippolito* v. *Stafford,* 141 Conn. 372, 374, 106 A.2d 470; *Weinstein* v. *Hallas,* 140 Conn. 387, 390, 100 A.2d 733; *Meglio* v. *Comeau,* 137 Conn. 551, 553, 79 A.2d 187.

Ordinarily, in a case in which the jury, by rendering a verdict for the defendant, as here, does not reach the question of damages, errors in rulings upon evidence relating to damages are harmless, and therefore claims that such errors were made do not require extended discussion. *Sibley* v. *Krauskopf,*

[1] "Sec. 2432. SUFFICIENCY OF HEADLIGHTS. When there shall not be sufficient light within the limits of the traveled portion of the highway to make all vehicles, persons or objects clearly visible within a distance of at least two hundred feet, the forward lights which a motor vehicle, and the forward light which a motorcycle, are required to display shall, when any such motor vehicle or motorcycle is in motion, throw sufficient light ahead to show any person, vehicle or object upon the roadway straight ahead of such motor vehicle or motorcycle for a distance of at least two hundred feet."

118 Conn. 158, 166, 171 A. 4; *Trasacco* v. *New York, N.H. & H.R. Co.,* 113 Conn. 355, 364, 155 A. 493; *Atwood* v. *Connecticut Co.,* 82 Conn. 539, 547, 74 A. 899. Since, however, the plaintiff claims that the rulings on evidence assigned as error not only were erroneous but were prejudicial to him on the issue of negligence, because of the nature of the testimony admitted, they should be examined.

In his direct examination the plaintiff testified that he did not begin to appreciate the seriousness of his condition until a few weeks after the collision and that thereafter he continued to get worse. He then stated that during the past two or three years he had suffered a loss or diminution of his sexual powers. His preceding testimony was so intimately associated with his claimed loss or diminution of sexual powers as to show clearly that he claimed it was a result of the collision. In addition, the plaintiff produced Dr. Stanley Dean, his psychiatrist and neurologist, who testified on direct examination that the plaintiff had told him that his marital compatibility had been seriously interfered with. Rose Delfino, called by the plaintiff, in her direct examination testified that she was married to him in 1947. She also testified as follows: "Well, it seems his condition was pretty good for several months and after we were married a little over a year or so, he just isn't the right man. Seems that he just can't produce children after that length of time."

Thereafter the defendant called her as its witness and on direct examination asked her if she had ever gone to see a Dr. Meeker of Greenwich. She answered that she did not know him and had never gone to him. The defendant produced Dr. D. Olin Meeker, who testified that he was a physician. The plaintiff objected when the witness was asked if Rose Delfino

had been to see him in January, 1950. The objection was overruled and the witness answered that she had. The plaintiff claims that the defendant, having called Rose Delfino as its witness, could not impeach her and that the trial court erred in overruling his objection. A party, "having called a witness and sought the benefit of his testimony by putting him on the witness stand . . . may contradict him by another witness" and may directly impeach him "where it is shown to the satisfaction of the court that the testimony of the witness is a surprise to him, or is inconsistent with other statements made by the witness, that he is adverse or hostile or for some equally potent reason, as the interests of justice under the particular circumstances of the case seem to the court to require." *Schmeltz* v. *Tracy,* 119 Conn. 492, 498, 177 A. 520. We cannot say that the trial court abused its discretion in admitting this testimony by Dr. Meeker, so that, out of a comparison of the two statements, the jury might be able to find where the truth lay. *Fox* v. *Schaeffer,* 131 Conn. 439, 449, 41 A.2d 46.

While Dr. Meeker was on the stand, he was asked by the defendant whether Rose Delfino stated to him the cause of the plaintiff's lack of capacity to have normal marital relations. After he had answered in the affirmative he was asked the reason she gave. The plaintiff objected on the ground that Mrs. Delfino, in testifying for him as to his loss of sex powers, had not testified as an expert witness. The trial court permitted the witness to answer the question, and he testified that Mrs. Delfino had "related a history [of] witnessing incest between [her husband] and his mother." The plaintiff now claims that this testimony was hearsay evidence and that consequently the court should not have admitted it. This ground

of objection was not stated at the trial. It is now claimed for the first time. For this reason we do not consider it. *Borucki* v. *MacKenzie Bros. Co.,* 125 Conn. 92, 103, 3 A.2d 224; *Petrillo* v. *Kolbay,* 116 Conn. 389, 395, 165 A. 346; *Jackiewicz* v. *United Illuminating Co.,* 106 Conn. 302, 309, 138 A. 147; Maltbie, Conn. App. Proc., p. 61.

On his direct examination Dr. Meeker was asked hypothetically if an incestuous act could be a major factor in causing psychoneurotic symptoms. The witness answered that it could be. The plaintiff objected on the grounds that it called for an answer as to a possibility rather than a reasonable probability and that the only foundation in the evidence for the hypothetical question was the testimony of the witness, Dr. Meeker. The court ruled that the answer would stand. The record does not indicate that an exception was taken. An exception to a ruling must be taken in order to make it a ground for appeal. Practice Book § 155.

In his remaining assignment of error the plaintiff claimed that the trial court erred in filing a "Memorandum Supplementing Denial of Motion to Set Aside Verdict." This assignment was not pursued in the plaintiff's brief or oral argument and is considered as abandoned. *Freund* v. *Burns,* 131 Conn. 380, 386, 40 A.2d 754; Maltbie, Conn. App. Proc., § 165.

There is no error.

In this opinion the other judges concurred.