## ROSE K. QUEDNAU *v.* ANN T. LANGRISH

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

Argued October 10—decided December 26, 1957

*Edward Seltzer,* for the appellant (plaintiff).

*Walter J. Sullivan,* with whom, on the brief, was *Joseph V. Fay, Jr.,* for the appellee (defendant).

BALDWIN, J. The plaintiff had a verdict for $4000 for personal injuries resulting from the negligent operation of the defendant's automobile. The plaintiff moved to set the verdict aside as inadequate. The court denied her motion. She has

appealed, assigning error in the finding, in the denial of her motion, and in the charge to the jury.

A finding in a jury case is a narration of facts claimed by the parties to have been proven. Its purpose is to test the rulings of the court made during the trial. When the evidence affords a basis for the facts claimed, as it does for the portions of the finding challenged by the plaintiff, no corrections are warranted. *Delfino* v. *Warners Motor Express,* 142 Conn. 301, 302, 114 A.2d 205; Maltbie, Conn. App. Proc. (2d Ed.) p. 199.

The plaintiff's claims of proof may be stated in summary as follows: She was walking along the edge of the road on February 13, 1953, when the defendant's car backed into her and threw her forcibly to the ground. She received injuries to her right leg, hip, pelvic area, buttocks, and her back from her buttocks to her neck; her left ankle was scraped and bleeding, both arms ached, and she began to have severe headaches and dizzy spells. She was rendered nervous, distraught and hysterical. She remained in the hospital two days and thereafter was confined to her bed at home for ten weeks. She was away from her work for eighteen weeks. She has had a poor recovery and has been left with a severe nervous reaction and a permanent partial disability of 10 per cent in her right knee. Prior to her injury, she was in good health but with a low threshold of pain. Unknown to her, she had an osteophyte formation in the region of her sixth cervical vertebra which caused her no pain. This condition was aggravated by the accident and resulted in headaches and pain in her shoulders and left arm. She was forced to obtain further medical care, hospitalization and surgery because of this condition, and she was left with an over-all perma-

nent partial disability of 5 to 10 per cent. She was forty-nine years old and earned $51.50 a week. She had a life expectancy of 21.63 years. Her special damages were $2297.75.

The defendant's claims of proof may be stated in summary as follows: The plaintiff was examined at her home following the accident by Dr. David W. Moser, who sent her to the hospital for examination, rest and sedation. The records of Dr. Moser and the hospital disclose only complaints and treatment related to bruises, contusions, and abrasions of the lower extremities, particularly the right side. Dr. Moser treated the plaintiff with sedation frequently during February and March, 1953, and periodically until September, 1956. The plaintiff's complaints of pain persisting, Dr. Moser on April 14, 1953, referred her to Dr. Gerald S. Greene for an orthopedic examination. Dr. Greene diagnosed a partial tearing of the gastrocnemius muscle and prescribed therapy. The plaintiff's first complaint of neck pain to Dr. Greene was made on March 17, 1954. He referred her to Dr. William B. Scoville, who gave her a neurological examination on April 20, 1954. Dr. Moser had noted complaints of neck pain on January 24, 1953, but the plaintiff in giving her history to Dr. Scoville stated that she had had no such pain until December, 1953. The complaints continued, and in December, 1954, Dr. Scoville operated on the osteophyte on the plaintiff's sixth cervical vertebra, enlarging the nerve passage to relieve nerve pinching. An osteophyte is common in people in middle life and is a gradual and insidious process over the years, continuing until it impinges upon the nerve and requires surgical treatment. It was not caused by the accident. The plaintiff had a low threshold of pain, and her complaints involved "much

functional overlay." The special damages reasonably attributable to the treatment of the osteophyte were $1360.15.

The plaintiff assigns error in the portion of the charge relating to her low threshold of pain and the so-called functional overlay. That portion is set forth in full in the footnote.[1] She claims that the court's comment upon the medical testimony relating to functional overlay was argumentative and tantamount to instructing the jury to find that she had exaggerated her injuries beyond reason. It is not only the right but often the duty of the trial court to comment upon the evidence. It has a wide discretion in performing that function. Comments are not improper if they tend to "uncover the weakness of a weak case, the difficulties of a difficult case, or the strength of a strong case." *State* v. *Marx,* 78 Conn. 18, 28, 60 A. 690. The court, however, must leave the jury free to make their own decision of fact unless only one conclusion is reasonably possible. It must be careful not to misstate the evidence, and the comment must be fair and reasonable. The nature and extent of the comment must depend largely upon the facts of the particular case and the manner in which it has been tried. *Heslin* v.

---

[1] "Now, there was some reference made in this case to what is called the low threshold of pain and suffering of this plaintiff and of her having what was called sort of a functional overlay. You may understand what is meant by that. I seem to be a little bit in the dark about it, myself. I think that it boils down to this, that the gentlemen are too polite to say it, but what they mean is that because the plaintiff has been injured and is seeking damages, her injuries are exaggerated to a point which is perhaps beyond reason and that the determination of the lawsuit is very apt to cure a great deal of those complaints. That's what I take it that they mean by functional overlay. That is not a rule of law, so you are not bound to take it from me. It is just an observation by me. You can use your own judgment in evaluating it."

*Malone,* 116 Conn. 471, 477, 478, 165 A. 594; General Statutes § 7969. The court in its charge cannot invade the province of the jury, and it must refrain from improper remarks which might injure a litigant in the jury's eyes. *LaChase* v. *Sanders,* 142 Conn. 122, 125, 111 A.2d 690; *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 502, 101 A.2d 500. In the portion of the charge relating to damages, the court in the present case, referring to the several allegations of the complaint, instructed the jury that it was their right, which the court was not taking away from them, to consider all the allegations. It then stated in summary the claims of the plaintiff and referred specifically to the claim for permanent injuries and the testimony of the doctors who had treated her. The court then charged that the jury should weigh the testimony of the doctors in the light of all the evidence in the case and "give to it such weight as you think it deserves." The theme that it was the jury's function to resolve the facts as to damages was reiterated several times in the charge.

The plaintiff claims that the vice of the court's comment is that the court put an improper interpretation, unfavorable to her, upon the medical testimony. In her claims of proof she concedes that she "was a person with a low threshold of pain." The defendant claimed to have proven that the plaintiff's complaints involved "much functional overlay." Since the symptoms from which the nature, extent, and permanency of the plaintiff's injuries were deduced were in large part subjective, the plaintiff's complaints of pain being relied upon, rather than objective, the factors of the threshold of pain and the functional overlay were important. To understand the finding more fully, under the peculiar

circumstances of this case, we may examine the evidence as printed in the appendices. *Baldwin* v. *Robertson,* 118 Conn. 431, 434, 172 A. 859; Maltbie, Conn. App. Proc. (2d Ed.) § 131. Dr. Moser, who was the first to treat the plaintiff, stated: "If a person has a stronger sensation of pain or has more symptoms than we feel is physically justified . . . we refer to it as 'functional overlay,' meaning that in their own minds they are exaggerating the complaints which we think they should have." Dr. Scoville had noted in the plaintiff's hospital record that her case was "aggravated by . . . litigation factors" and was a "disabling liability case with much functional overlay." Dr. Vincent J. Turco, a medical expert who had examined the plaintiff in the defendant's behalf, testified that "an early settlement of litigation . . . would be . . . good treatment."

The term "functional overlay" appears to be a substitute for "psychogenic overlay," which has been defined as "[t]he emotionally determined increment to an existing symptom or disability which has been of an organic or physically traumatic origin." Laughlin, Neuroses in Clinical Practice, p. 732. Even if the comment by the trial court is taken at its worst, it had a basis in the claims of the parties as to the medical testimony of the witnesses called by the plaintiff. The inference was that the plaintiff was exaggerating her complaints beyond what was reasonable in the light of the nature of her injuries and that the termination of the litigation was, as the court charged, "apt to cure a great deal of those complaints." The court then stated that it was giving its own view of the meaning of "functional overlay," and added: "That is not a rule of law, so you are not bound to take it from me. It is just an observation by me. You can use your own

judgment in evaluating it." The court thereafter instructed the jury that the plaintiff was entitled "to recover for injuries and damages fair compensation . . . even though her injuries and the effect thereof are more severe and serious and will be prolonged longer than otherwise would have been [the case], because of her pre-existing condition of health at the time of the accident." Other portions of the charge relating to the plaintiff's claims as to her injuries were adequate and unexceptionable.

It must be borne in mind that the trial judge and the jury had the plaintiff and her witnesses before them in court and had an opportunity to hear their testimony and observe their conduct on the witness stand. The comment bore directly upon the credibility of the plaintiff's testimony as to her complaints. Viewed in this light, it was not unlike comments on the credibility of witnesses which have been considered by us in other cases, and under the circumstances of this case the comment was not improper or harmful. *Nicewicz* v. *Nicewicz,* 104 Conn. 121, 123, 132 A. 399; *Bredow* v. *Woll,* 111 Conn. 261, 263, 149 A. 772; *Moyles* v. *Connecticut Co.,* 115 Conn. 80, 84, 160 A. 307; *Kast* v. *Turley,* 111 Conn. 253, 257, 149 A. 673; *Crotty* v. *Danbury,* 79 Conn. 379, 387, 65 A. 147; Maltbie, Conn. App. Proc. (2d Ed.) §§ 99, 100.

The plaintiff requested the court to charge that the jury should consider the depreciated value of the dollar in making an award of damages to the plaintiff. The court referred to the request and stated: "[T]he Supreme Court of our State has indicated that at any time when there is a devalued dollar existing . . . it is a factor that the jury has a right to consider, to take into consideration the purchasing power of the dollar in making an award,

to reimburse or recompense somebody. I don't think that I need to mention that any further. Damages are awarded in dollars, and dollars are dollars, as I see it." In the cases wherein reference has been made to the deflated value of the dollar, this court was considering the question whether the verdict was excessive. In comparing the amount of a verdict for damages for personal injuries rendered in a given case with verdicts rendered in cases decided a considerable time before, we have noted the depreciation of the dollar. *Monczport* v. *Csongradi*, 102 Conn. 448, 453, 129 A. 41; *White* v. *L. Bernstein & Sons, Inc.*, 123 Conn. 300, 303, 194 A. 723; *Prosser* v. *Richman*, 133 Conn. 253, 256, 50 A.2d 85. In reviewing a claim that the jury's award was excessive, we have also noted, without specific comparison with any other verdict although with that thought in mind, that the dollar was worth less than in earlier years. See *Keyes* v. *Churchward*, 135 Conn. 115, 119, 61 A.2d 668; *Slabinski* v. *Dix*, 138 Conn. 625, 629, 88 A.2d 115; *Gorczyca* v. *New York, N.H. & H.R. Co.*, 141 Conn. 701, 705, 109 A.2d 589.

There was no basis in the evidence for the requested charge in the instant case. Evidence of comparable verdicts would be inadmissible. It is unnecessary to hold unequivocally, in deciding this case, that no case could arise in which it would be proper to charge the jury that they should take into consideration the depreciated value of the dollar in assessing damages. See 2 Harper & James, Law of Torts, § 25.11. We hold that in this case no such charge should have been given. The court should have ignored the request. Its remark about a dollar being a dollar had the effect of confusing the issue, if not completely nullifying the reference to the request. A trial court should charge the jury

in unequivocal language. The more succinct the statements of the law, the more effective they are for the jury's guidance. *Pratt, Read & Co.* v. *New York, N.H. & H.R. Co.*, 102 Conn. 735, 740, 130 A. 102; *State* v. *Esposito*, 122 Conn. 604, 607, 191 A. 341. The charge was improper both in its form and in its statement of the law. The plaintiff cannot complain, however. If the jury took the view that they could consider that the dollar was depreciated in making their award, the charge was helpful, rather than harmful, to the plaintiff. If they did not take that view, they acted correctly. Furthermore, the plaintiff induced the error by her request and therefore cannot complain. *Chapin* v. *Popilowski*, 139 Conn. 84, 88, 90 A.2d 167; Maltbie, Conn. App. Proc. (2d Ed.) § 96, p. 117. The plaintiff gains nothing on this assignment.

The court did not err in denying the plaintiff's motion to set aside the verdict because the award was inadequate. The evidence on the extent of the plaintiff's injuries, particularly that relating to the osteophyte and the surgery performed to relieve its effects, was conflicting. While the plaintiff claimed special damages of $2297.75, the defendant claimed that $1360.15 of that amount was properly chargeable to hospital and medical expenses and loss of earnings connected with the surgery incident to the osteophyte, for which the defendant was not responsible. The amount awarded is not so small as to compel the conclusion that the jury were unduly influenced by partiality, prejudice, mistake or corruption. *Sheiman* v. *Sheiman*, 143 Conn. 222, 223, 121 A.2d 285.

There is no error.

In this opinion WYNNE, C. J., KING and MURPHY, Js., concurred.

DALY, J. (dissenting). It is stated in the opinion of the majority that the trial court did not err in charging the jury as follows: "Now, there was some reference made in this case to what is called the low threshold of pain and suffering of this plaintiff and of her having what was called sort of a functional overlay. You may understand what is meant by that. I seem to be a little bit in the dark about it, myself. I think that it boils down to this, that the gentlemen are too polite to say it, but what they mean is that because the plaintiff has been injured and is seeking damages, her injuries are exaggerated to a point which is perhaps beyond reason and that the determination of the lawsuit is very apt to cure a great deal of those complaints. That's what I take it that they mean by functional overlay. That is not a rule of law, so you are not bound to take it from me. It is just an observation by me. You can use your own judgment in evaluating it." As appears from this charge, notwithstanding the fact that the plaintiff's expert medical witnesses did not testify that her "injuries are exaggerated to a point which is perhaps beyond reason and that the determination of the lawsuit is very apt to cure a great deal of those complaints," the court stated that they meant to say it but were too polite to do so.

The plaintiff offered evidence to prove and claimed to have proved that as a result of the injuries occasioned her by the defendant's negligence she has "a permanent partial disability of ten per cent in her right knee" and "an over-all permanent partial disability of five per cent to ten per cent of her whole body." One of her expert medical witnesses, Dr. David W. Moser, had testified that, in his opinion, as a result of the injuries sustained by the plaintiff, she had a permanent condition which

would cause considerable pain upon "any insult to her body such as the nature of even a common cold," that as far as he could determine there was not much functional overlay in this case, and that he did not think that "the litigation has any bearing upon the aggravation of her symptoms." Another of the plaintiff's expert medical witnesses, Dr. Gerald S. Greene, an orthopedic surgeon, had testified that, in his opinion, the plaintiff "was a very tense, very nervous person, with again what we call a low threshold for pain, a person who is very sensitive to minor or to less pain than a person with a higher threshold," and that her injuries had left her with a 10 per cent permanent disability in her right leg. Her third expert medical witness was Dr. William B. Scoville, a neurosurgeon. He had operated on the plaintiff and testified that, in his opinion, she had a permanent disability resulting directly from the injuries she had received and was "a very high strung woman, which occasionally women are, and has a low threshold for pain." The defendant's expert medical witness, Dr. Vincent J. Turco, testified that, in his opinion, "this was the type of case in which an early settlement of litigation . . . would be considered as good treatment," that "there was some functional overlay in the case," and that "the complaints would subside when the litigation is settled."

In the opinion of the majority it is stated that the "comment [of the court] bore directly upon the credibility of the plaintiff's testimony as to her complaints" and that, "[v]iewed in this light, it was not unlike comments on the credibility of witnesses which have been considered by us in other cases, and under the circumstances of this case the comment was not improper or harmful." The court, in saying that

"the gentlemen are too polite to say it, but what they mean is that because the plaintiff has been injured and is seeking damages, her injuries are exaggerated to a point which is perhaps beyond reason and that the determination of the lawsuit is very apt to cure a great deal of those complaints," made a direct attack upon the credibility of the plaintiff's expert medical witnesses. It was an assertion that they meant something directly contrary to their spoken words. It was a positive statement that they, in testifying that the injuries to the plaintiff had left her with permanent partial disabilities, meant "that the determination of the lawsuit is very apt to cure a great deal of those complaints." The similarity between what the court said they meant and the testimony of the defendant's expert medical witness "that the complaints would subside when the litigation is settled" makes crystal clear the court's indulgence in an argumentative presentation of the defendant's claim in contravention of the orderly administration of justice. The difference between the so-called comment and the portions of charges discussed in the cases cited in the majority opinion is striking.

By expressing its view as it did, the court indulged in an argumentative presentation of the claim of the defendant upon one of the important issues in the case. It should not have done this. The additional statements made by the court cannot, and do not, save such a charge. *Bundy* v. *Capital National Bank & Trust Co.*, 124 Conn. 309, 314, 199 A. 561; *Ladd* v. *Burdge,* 132 Conn. 296, 299, 43 A.2d 752. The court must leave the jury free to arrive at their own decision upon any issue of fact and should be careful not to misstate facts or evidence. *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 A. 594.

The practice of a judge in entering into the trial of a case as an advocate is emphatically disapproved. The judge is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through expressions or conduct contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence. *LaChase* v. *Sanders,* 142 Conn. 122, 125, 111 A.2d 690; *Commonwealth* v. *Myma,* 278 Pa. 505, 508, 123 A. 486.