In the above matter the plaintiff sought damaged from the defendant for personal injuries, medical expenses and loss of earning capacity as a result of a two-car collision which occurred in Hartford on April 12, 1989.
The jury returned a verdict in the plaintiff's favor. Pursuant to Section 52-572h(f) of the general Statutes, the jury itemized the award. It found the economic damages to be $1,400 and found zero non-economic damages. The jury further found the plaintiff to be 20% contributorily negligent. The court accepted the verdict, without objection by counsel.
The jury could reasonably have found the following facts.
At about 4:20 p.m. on April 12, 989, the plaintiff was driving north on Prospect Avenue, a public highway. Said Highway was divided into two travel lanes in each direction. The plaintiff's car was in the left of the two northbound lanes, and the defendant's car was in the righthand lane. In the vicinity of Kane Avenue, the defendant's vehicle moved over the lane divider and made contact with the right portion of the front bumper of the plaintiff's car. Both cars pulled to the side of the road and the police were called. The officer was informed that there were no injuries. Both was a slightly sprung front bumper. The cost of repair was $250.
Prior to the accident, the plaintiff had been treating with the staff of her HMO, Kaiser Permanente medical Group P.C., for complaints of headaches since February, 1989, on a bi-weekly basis. her complaints were that she had had such headaches since the previous Christmas. She consulted the HMO on April 21, 1989, described her injury as a whiplash and was given a prescription of Flexoril.
Without being referred, she consulted Dr. Steven Selden, an orthopedic surgeon on May 1, 1989. She described her complaints as pains in the back, CT Page 11087 neck and shoulder. At her request, he referred her for physical therapy. She was Dr. Selden again on May 12, 1989, at which time he took X-rays. The results were negative. The history Dr. Selden took at the original consultation describes the accident as a "broadside type" and omits any previous incidence of headaches. Dr. Selden referred her to Dr. Gary Belt, a neurologist, and told the plaintiff not to return to work.
Dr. Belt examined her on May 16, 1989. In his report, he noted "Her pain and suffering seemed out of proportion to the degree of pathology throughout her examination." He also noted "She does have a great deal of functional overlay which may be making her examination worse than it actually is."
The plaintiff continued monthly visits with Dr. Selden until September 1989, at which time she was returned to work. He saw her twice thereafter, noting her continued physical therapy.
In March of 1990, Dr. Selden opined she had reached maximum improvement and gave her disability ratings of 10% of the lumbar spine and 5% of the cervical spine.
At trial, the reports of the plaintiff's doctors were admitted into evidence. The defendant offered the testimony of Dr. Robert Etkind, an orthopedic surgeon. Dr. Etkind offered the opinion that there was no significant abnormality, and that X-rays of the cervical and lumbar spine including flexion and extensions were interpreted as normal. He found 9% impairment of the ranges of motion of the spine. However this impairment was subject to functional overlay. he described this as a condition whereby the plaintiff could bend her spine, but would not do so. Also, she claimed that she could not move her neck, but her head followed his movements around the room as he spoke to her. he described "functional overlay" as malingering, i.e., exaggeration of complaints, since the claimed infirmities were subjective only, and could not be evaluated by any objective test. He did not believe that she had any impairment at all, but that if someone did believe the plaintiff, the rating would apply.
The plaintiff sought recovery for her medical expenses, pain, and suffering, impairment of function and loss of earnings.
Her treatment bills were as follows:
 Dr. Selden $ 660 Dr. Belt 125 Phelps Physical Therapy 60 Hartford County Physical Therapy 555 CT Page 11088 ------ $1400 Claimed loss of wages $3200
The plaintiff has moved to set aside the verdict as to amount of damages only, as being inadequate and contrary to the law and the evidence. In the alternative, she seeks to have the entire verdict set aside, or that the court order an additional $100,000.
Essentially, the claim is that zero non-economic damages is inadequate as a matter of law, and that the court should have reinstructed the jury on the issue of non-economic damages.
The plaintiff relies on language from Malmberg v. Lopez, 208 Conn. 675,681. The court has made it clear that "an award limited to . . . special damages is `manifestly inadequate' and should be set aside . . ." citing Johnson v. Franklin, 112 Conn. 228, 229. the quotation is cited in Jeffries v. Johnson, 27 Conn. App. 471, a post-tort reform case.
In Jeffries, the jury returned a verdict for the plaintiff and awarded economic damages in the exact amount of the plaintiff's medical bills (p. 473, n. 3); and awarded zero for non-economic damages. (See General Statutes52-572h(a)). "the award of economic damages and the finding of a percentage of contributory negligence on the part of the plaintiff make it abundantly clear that the jury found the plaintiff's injuries were in fact caused by the negligence of the defendant, and that the plaintiff was entitled to more than nominal damages,"; citing Creem v. Cicero, 12 Conn. App. 607, 611 and Brennan v. Manlapaz, 19 Conn. App. 71, 74.
It should be noted that all such cases are the progeny of Johnson v. Franklin, supra. At page 229, the court states "The verdict in each case was for the exact amount of the special damages proved and with no allowance for the pain or physical injuries suffered which were substantial" (Emphasis added). The last condition existed in all the cited cases following; Johnson v. Jeffries, for example, in which there were injuries to the plaintiff's head, neck, arm, and knee. Surgery on the knee was performed to correct a torn medial meniscus, caused by the accident.
In the instant case, the jury could reasonably have found that the plaintiff suffered no pain as a result of the accident. Her complaints were all subjective. She had been treating for similar complaints prior to the accident. The contact between vehicles was minimal. She testified that she was unhurt after the accident. She consulted a specialist without being referred and described to him "different headaches" from those she had been treating for. Dr. Etkind described her as a malingerer and didn't CT Page 11089 believe her claims of immobility. See Quednau v. Langrish, 144 Conn. 706,712.
It is entirely consistent for the jury, following the charge given them, to award the treatment expenses which were largely diagnostic, i.e., to discover whether there was any relation between her complaints and the accident, and not to award damages for pain and suffering, because they simply didn't believe the plaintiff suffered any pain or suffering from the accident as she wasn't hurt. The essential conditions in Johnson are not present in this case. The fact patterns in this case are not dissimilar to those in Rickert v. Fraser, 152 Conn. 678, 680 and Kuhn v. Bridgeport Ambulance Service, 11 Conn. App. 179 184, 185. See Quednau, supra. Even her own physician, Dr. Belt felt, as did Dr. Etkind, that she was exaggerating her complaints.
The verdict is not palpably against the evidence, nor is there any evidence that the jury was improperly influenced. See Zarrelli v. Barnum Festival Society, Inc., 6 Conn. App. 322, 327 and cases cited; Rickert, supra, p. 682.
The defendant also claims the court erred in not resubmitting the verdict to the jury for reconsideration. In light of the foregoing, there was no need to. Further, the court was not so requested.
The plaintiff's motions are denied.