## MARY E. GUNN *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.      December 16, 1897. — June 22, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Interrogatories to President of Corporation — Death — Employers' Liability Act — Defect in " Ways, Works, or Machinery " — Evidence — Superintendence.*

*It seems* that, in an action against a railroad corporation for the death of an employee, its president may be ordered to answer interrogatories propounded under Pub. Sts. c. 167, §§ 49 *et seq.*, which he refuses to answer on the ground that he has no personal knowledge of the subjects of inquiry, the interrogatories being otherwise unobjectionable ; and the fact that testimony is introduced at the trial referring to many, if not all, of the matters referred to in the interrogatories does not cure the error in refusing to order them to be answered.

A truck which consists of axles, wheels, and a frame, all fastened together and fitted to the tracks, and which is in constant use with other trucks as a part of the appliances of the repair shop of a railroad corporation for doing the work that is carried on there, is a part of the ways, works, or machinery within the meaning of St. 1887, c. 270; and in an action for the death of an employee caused by the falling upon him of a locomotive which had been placed on the truck, there is evidence that the truck was defective, if it appears that it had been there fifteen or sixteen years or more, that the effect of rolling such a truck on an iron rail is to flatten out the wheels, that the tendency of the constant use of iron is to weaken it for supporting weights, and that using it for heavy weights would weaken it much quicker; that testimony also would have tended to show, if admitted, as it should have been, that engines were twice as heavy as when the truck was purchased fifteen or seventeen years before and that this particular engine was one of the heaviest on the defendant's railroad.

At the trial of an action against a railroad corporation for the death of an employee caused by the falling upon him of a locomotive, which had been placed on a truck in the repair shop, it is competent for the jury to find that, although the

iron was sound where the wheel of the truck broke, yet, by reason of its long use and the increase in the weight of engines, the truck had become unsuitable for the use to which it was put, and that, if the wheel had been of proper strength, it would have withstood the strain caused by meeting the obstruction on the rail.

At the trial of an action under the employers' liability act, St. 1887, c. 270, for causing the death of an employee, alleged to have been due to the negligence of a person in the defendant's service intrusted with "superintendence," a fellow employee cannot be asked, "Have you ever noticed anything with regard to the care or the method which the superintendent uses in his work?" and, "Have you noticed whether or not the superintendent in directing the work has any tendency either to show great care or to rush work?"

TORT, under the employers' liability act, St. 1887, c. 270, by the widow of John A. Gunn, to recover for his death, on November 1, 1895, while he was standing in a repair shop of the defendant in South Boston, upon a step-ladder and was varnishing a tender, then upon one of the tracks in the shop, with his back to a locomotive then being repaired upon an adjoining track. At the trial in the Superior Court, before *Hopkins*, J., it appeared that the locomotive was blocked up at each end upon trucks which rested each upon four wheels of cast iron weighing about thirty pounds each; that in moving the locomotive a wheel of the truck was broken at a point where it came in contact with something with which it had been trigged, and of which there was testimony that it looked like a hexagon nut, and that the locomotive fell over upon Gunn and killed him.

The judge directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The remaining facts appear in the opinion.

*H. N. Shepard*, for the plaintiff.

*J. H. Benton, Jr. & C. F. Choate, Jr.*, for the defendant.

MORTON, J. The plaintiff filed interrogatories to the president of the defendant corporation under Pub. Sts. c. 167, §§ 49 *et seq.* He answered three of them, but refused to answer the others, which related to various matters pertaining to the accident, on the ground that he had no knowledge, meaning no personal knowledge, about the subjects of inquiry. The first question for consideration is whether he should have been ordered to answer the interrogatories which he refused to answer.

The defendant contends that the president could be required

to answer only as to those matters of which he had personal knowledge. It is not contended that the interrogatories were otherwise objectionable.

" The main purpose of these provisions of the practice act," says the court in *Wilson* v. *Webber*, 2 Gray, 558, 561, referring to those provisions of St. 1852, c. 312, which are now incorporated in Pub. Sts. c. 167, §§ 49 *et seq.*, " was to substitute, in place of the tedious, expensive, and complex process of a bill of discovery on the equity side of the court, an easy, cheap, and simple mode of interrogating an adverse party, as incident to and part of the proceedings in the cause in which the discovery was sought." To facilitate this object the statute provides that, if a corporation is a party to a suit, " the opposite party may examine the president, treasurer, clerk, or any director or other officer thereof, in the same manner as if he were a party to the suit." Pub. Sts. c. 167, § 53. This no doubt grew out of and was suggested by the practice which prevailed in equity of making an officer a party in a case where discovery was sought from a corporation. *Post* v. *Toledo, Cincinnati, & St. Louis Railroad*, 144 Mass. 341, 345. *Wilson* v. *Church*, 9 Ch. D. 552, 555, 556.

The effect of the statute is to give to the opposite party the same right of interrogating an officer as if he were a party, that is, the corporation itself. Under the English practice in chancery it is settled that a party may be compelled to answer, not only as to those matters which are within his own personal knowledge, but also as to those respecting which there is information by means of inquiries from his servants, agents, or attorneys fairly within his reach. *Glengall* v. *Frazer*, 2 Hare, 99. *Anderson* v. *Bank of British Columbia*, 2 Ch. D. 644, 659. *Bolckow* v. *Fisher*, 10 Q. B. D. 161. Pom. Eq. Jur. § 204. Adams, Eq. 12. Such information is regarded as being in a sense information possessed by him. Under Rule 5, Order XXXI. of the Rules of the Supreme Court, 1883, adopted by authority conferred by the Judicature Act of England, (see Bray on Discovery, 637,) which differs from Pub. Sts. c. 167, § 49, only in not allowing interrogatories to be filed as of right, it has been said: " Directors of a company, in answering interrogatories, must not only answer as to their individual knowledge, but in answering for

the company they must get such information as they can from other servants of the company who presumably have conducted the transaction in question." *Southwark Water Co.* v. *Quick*, 3 Q. B. D. 321, per Cotton, L. J.

The object of discovery is to obtain information material to the merits of the case of the party seeking it which is within the control or possession of the opposite party, or to compel admissions in respect to material matters. Bray on Discovery, 1, 2. It tends to avoid expense and delay, and we see no good reason for holding that, when it is sought through interrogatories filed under the statute, it should be granted less freely than in equity, or even that it should be limited to cases in which it would be granted in equity. The statute imposes no such limitation. The fact that the information may be obtained through witnesses does not take away the right of discovery through interrogatories. *Hubbard* v. *Hubbard*, 6 Gray, 362. It may be more conveniently obtained by means of interrogatories. In the case of an officer of a corporation, the information must be official, that is, derived through his connection with the corporation. *Hancock* v. *Franklin Ins. Co.* 107 Mass. 113, 115. In any case, where the answers are upon information and belief, it may be so stated. But an admission is none the less binding because made upon information and belief, and for that reason the party interrogating properly may insist that the party interrogated shall make reasonable inquiries of his servants, agents, and attorneys, who were engaged as such in the transaction in question, for the purpose of ascertaining the facts in relation thereto, and answering accordingly. The president of a corporation occupies a position superior in authority to the other officers and to the employees, and generally speaking has a right to require from them information in regard to matters arising in and connected with the discharge of their duties. In a sense he sustains towards them the relation of employer to employee, or of principal and agent. We do not mean to intimate that the duty of inquiry obliges him to seek information from those who have left the service of the corporation, or that he is to be subjected to unreasonable trouble and expense in answering the interrogatories, or that discovery can extend to all information within the possession of those in the employment of the corporation,

however obtained. The interrogatories are addressed to the conscience of the party. They do not require him to set down mere rumors, or simply to state what he has been told. They call for facts, and, in addition to the disclosure of such personal knowledge as he may have, if any, they require such reasonable investigation on his part by means of inquiries from those who are at the time subject to his direction or control as will enable him to state what the facts are. The party interrogating cannot compel him to get up his case for him, nor to disclose his own case, though the fact that some of the information required by the answers may be material to his own case will not excuse him from answering, if it also is material to that of the party interrogating.

We do not think that the right of discovery extends to all information, however acquired, in the possession of the officer interrogated, or of those subject to his direction or control. If he or they have become possessed of material information derived through other than official channels, or in other ways than in the course of their employment at the time of the transaction in question, we do not think that the party interrogating is entitled to a discovery of it. Possibly, also, if an agent has investigated the matter and has ascertained and reported the facts, the party interrogating may not be entitled to a discovery of them. It is not necessary, however, to decide that now. The fact that the action is in tort, and relates to personal injuries, and that discovery could not be had, perhaps, in equity in an action for personal injuries, does not, we think, affect the right to file interrogatories. In England discovery by interrogatories has been allowed under the rule above referred to in a great variety of cases, and as to documents has been carried so far as to call forth strong expressions of disapproval from some judges; (see *Kennedy* v. *Dodson*, [1895] 1 Ch. 334, and *Graham* v. *Sutton*, [1897] 1 Ch. 761, 765;) but there can be no doubt, we think, of its utility when properly administered, and we are of opinion that, no objection having been made to the questions themselves, they should have been answered.

Testimony was introduced by the plaintiff at the trial tending to show what the facts were in regard to many, if not all, of the matters referred to in the interrogatories; but this did not cure

the error of refusing to order them to be answered.  *Baker* v. *Carpenter*, 127 Mass. 226.

We think that the truck constituted a part of the ways, works, or machinery, within the meaning of St. 1887, c. 270.  Though comparatively simple in construction, it consisted of axles, wheels, and a frame, all fastened together and fitted to the tracks, and was, as there was testimony tending to show, in constant use with other trucks as a part of the appliances of the repair shop for doing the work that was carried on there.  It was assumed in *Geloneck* v. *Dean Steam Pump Co.* 165 Mass. 202, and *O'Keefe* v. *Brownell*, 156 Mass. 131, that similar appliances constituted parts of the ways, works, or machinery.

We think, also, that there was evidence that it was defective. There was testimony tending to show that it had been there fifteen or sixteen years or more, that the effect of rolling such trucks on an iron rail was to flatten out the wheels, that the tendency of the constant use of iron is to weaken it for supporting weights, and that using it for heavy weights would weaken it much quicker.  The testimony also would have tended to show, if admitted, as we think it should have been, that engines were twice as heavy as when the truck was purchased, fifteen or seventeen years ago, and there was evidence that the engine which was being supported by the truck, and which fell over, was one of the heaviest on the defendant's railroad.  We think that, although the iron was sound where the wheel broke, it would have been competent for the jury to find that by reason of its long use, and the increase in the weight of engines, the truck had become unsuitable for the use to which it was put, and that, if the wheel had been of proper strength, it might have withstood the strain caused by meeting the obstruction on the rail. See *Geloneck* v. *Dean Steam Pump Co., ubi supra.*

The questions which were asked in regard to what the witness had observed as to the care of the superintendent were rightly excluded.*  We discover no error in regard to other aspects of

---

\* These questions were asked of a fellow employee on direct examination, and are as follows :

" *Q.* Have you ever noticed anything with regard to the care or the method which the superintendent uses in his work ?

" *Q.* Have you noticed whether or not the superintendent in directing the work has any tendency either to show great care or to rush work? "

the case, but, as the evidence may be different on a new trial, we do not deem it necessary to consider them. In the opinion of a majority of the court, the exceptions should be sustained.

*Exceptions sustained.*