## MARY E. SPINNEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 8, 1905. — April 7, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Negligence.    Street Railway.    Interrogatories.*

If the conductor of a street car while collecting fares negligently allows himself to be thrown by a jolt of the car against a passenger standing in the aisle of the car and holding on by a strap the railway company is liable to the passenger for injuries thus caused whether the conductor was competent or incompetent and whether or not the company reasonably might have known of his incompetency.

Orders allowing a party to whom interrogatories have been addressed leave to file further answers or further time in which to answer are within the discretion of the trial judge.

If a person to whom interrogatories are addressed declines to answer a question for one of the reasons for which he is permitted to decline to answer by R. L. c. 173, § 63, he must state the reason under oath in answer to the interrogatory in order to avail himself of the privilege.

In an action against a street railway company for personal injuries alleged to have been caused by the negligence of the conductor of a car of the defendant in which the plaintiff was a passenger, the plaintiff cannot by interrogatories filed

under R. L. c. 178, § 57, compel the defendant to disclose the contents of a report signed by the conductor and the motorman of the car containing an account of the accident and the names and addresses of the persons who were present.

TORT for personal injuries while the plaintiff was a passenger on a car of the defendant on February 7, 1902, alleged to have been caused by the negligence of the conductor of the car and of other servants of the defendant. Writ dated April 1, 1902.

At the trial in the Superior Court before *Bishop*, J. the jury returned a verdict for the defendant; and the plaintiff alleged exceptions in two bills as stated by the court.

*H. E. Bolles & J. L. Putnam*, for the plaintiff.

*E. P. Saltonstall & S. H. E. Freund*, for the defendant.

BARKER, J. The action is for personal injuries alleged to have been received by a passenger in an electric street car at the crossing of Massachusetts and Huntington Avenues in Boston. There was no dispute that the plaintiff was standing in the car, all the seats being occupied by passengers. She was thrown to the floor because of a jolt or jolts of the car as it moved over the crossing. As to other circumstances the evidence was contradictory, tending to prove, on the one hand, that the plaintiff and the conductor were the only persons standing in the aisle, the plaintiff being near the rear end and the conductor near the front and engaged in collecting fares, and that the plaintiff after having been taken from her footing by the jolting was hanging from a car strap when the conductor, thrown from near the front of the car to the place where the plaintiff was hanging, forcibly came against her and caused her to fall, he falling upon her. Also that the jolt or jolts were very violent and that they were caused in part by the turning on of the electricity for the purpose of moving the tongue of an electrical switch, as well as by the crossing of the car over other car tracks laid lengthwise on Huntington Avenue. On the other hand there was evidence tending to prove that a number of other passengers were standing in the aisle, that the conductor did not fall upon or against the plaintiff nor come in contact with her, that the plaintiff merely swayed back against the door and slid to the floor, and that there was no unusual or unreasonable jolt.

There was no contention but that the plaintiff was in the exercise of due care.

There are two bills of exceptions each filed by the plaintiff. The first is as to the action of the trial judge in dealing with requests for instructions to the jury. The plaintiff presented eleven requests, all of which it now is conceded were given in terms or covered by the charge, except the fourth, fifth and sixth. The first exception is to an alleged refusal to give those requests. The defendant presented six requests, and the fifth and sixth were given under an exception on the part of the plaintiff.

We think that the charge covered fairly and properly all the matters dealt with in the plaintiff's fourth, fifth and sixth requests. As no argument to the contrary has been addressed to us it is unnecessary to consider these requests in detail. The plaintiff's exception to the refusal to give them in terms is overruled.

The defendant's fifth and sixth requests, which were given in terms under the plaintiff's exception were as follows:

" 5. If there was no evidence that the conductor in this case was an incompetent man or one whom the defendant company might reasonably be expected to have known would be likely to trip or fall or act in a clumsy or careless way, and if the jerk of the car which caused the conductor to fall (if the jury believe it did cause it) was a jerk resulting from proper and careful handling and propelling of a safe and proper car in good condition, over safe and proper rails, switches or other equipment also in good condition, then the fact that the conductor fell would not of itself be evidence of negligence for which the defendant company could be held responsible in this case.

" 6. If there is no evidence that the defendant company had knowledge of the fact that this conductor was in any way incompetent either because of carelessness or because of the fact that he was an unusually clumsy or awkward man, then if the said conductor was thrown against the plaintiff by an ordinary movement of the car which of itself was no evidence of negligence, even if the jury believe that to be a fact, the defendant company could not be held responsible for the result of the said conductor falling against the said plaintiff."

In substance these requests are to the effect that although there was a jerk, if it resulted from the proper managing of a proper car upon a proper track the falling of the conductor upon the plaintiff would not of itself be evidence of actionable negligence, if the company did not know or could not reasonably be expected to know that he was an incompetent man, and that in the absence of such knowledge the defendant could not be held responsible in damages for the conductor being thrown against the plaintiff by an ordinary movement of the car. Or, in other words, that unless the defendant knew or had reason to know that the conductor was incompetent by reason of carelessness or awkwardness or clumsiness, the defendant could not be held responsible for injury received by the passenger by the conductor being thrown against her either by a jerk of the car or by its ordinary movement, if the car, the track and the management of the propelling of the car were proper as assumed in the fifth request, or without that, if he was thrown by the ordinary movement of the car as assumed in the sixth.

Correct and sufficient instructions as to the responsibility of the defendant for the conductor's acts had been given to the jury by the presiding judge in language of his own. After stating the conflicting evidence upon the point he said, "If the conductor's conduct was negligent and unfit for the duties of his position resulting in the plaintiff's harm, then that is negligence for which the defendant company would be responsible. But if he did on that occasion what it was reasonable to expect, if while he was standing collecting fares at the other end of the car this sudden jerk or jolt came and he was thrown beyond his power to prevent it, and he managed his person and his steps and momentum, and the force of his plunge, if he made a plunge, as well as he could, as well as was reasonable to expect under circumstances of that character, then the company would not be liable . . . on account of his personal conduct."

The movements and acts of the conductor in their bearing upon the safety of the plaintiff as a passenger were as between her and the defendant acts concerning their undertaking with her to use the proper degree of care in all respects to carry her safely. So to speak, his conduct in the car was official conduct as it regarded a passenger, and could not be looked at in a light

merely personal to himself. If it was in any respect wanting in due care and that negligence caused injury to the plaintiff's person, it was negligence for which the defendant was answerable, whether the conductor was competent or incompetent, and whether or not the company might reasonably have known his incompetency. Not only did these rulings forbid the jury to find that an injury to the plaintiff occasioned by the negligence of the conductor in carelessly coming in contact with the plaintiff and thereby throwing her down and falling upon her would not be a ground for damages unless the company knew or had reason to know that the conductor was incompetent, if the accident was caused by a jerk, but also if his so falling against the plaintiff was brought about merely by the ordinary motion of the car. Plainly a carrier of passengers is answerable for such negligence of an employee.

Probably the requests were understood by the presiding judge in some sense which at the time made them seem consistent with the rule laid down in his charge as to the effect of the personal conduct of the conductor. But we think they could not so have been understood by the jury, and that they tended to induce the jury to believe that even if they found that the plaintiff was hurt by the negligence of the conductor in carelessly allowing himself to be thrown against her, the defendant was not answerable unless it knew or had reason to know that he was incompetent. The exception to the giving of the fifth and sixth of the defendant's requests is sustained.

We think the other bill of exceptions must be overruled.

The plaintiff on July 14, 1902, filed interrogatories to the president of the defendant corporation under the provisions of R. L. c. 173, §§ 57 *et seq.* Answers were filed on July 16, 1902. On July 23 the plaintiff moved that the answers be adjudged insufficient and that the president be ordered to make further and complete answers. There was a hearing upon this motion, and on October 6, 1902, the defendant was ordered to file additional answers in accordance with a memorandum of the judge who heard the motion, and which said, "1. On the face of the interrogatories and answers, no legal reason appears why the defendant, by its president, should not fully answer the questions propounded by the plaintiff. *Gunn* v. *New York, New Haven,*

*& Hartford Railroad*, 171 Mass. 417, 420, 421.   2. At the hearing of the motion, counsel for the defendant stated that the president declined to answer, for the reason that he was within the protection of R. L. c. 173, § 63.   But the plaintiff is entitled to the oath of the party interrogated that the matters inquired of are within the protection of the statute.   This should be fully stated in the answer or answers.   3. The defendant may, on or before October 25, 1902, file such additional answers, if so advised, and I will then take the matter for further advisement."

On October 13, 1902, by leave of court further and fuller answers were filed, and again on October 29, 1902, further amended and fuller answers were filed, and thereupon an order of the court was entered in these words: " Defendant ordered to set out the reasons why it declines, by its president, to answer the interrogatories, on or before the second Monday of November, 1902."

On November 5, 1902, by leave of court the defendant filed a further amended answer.

The bill of exceptions does not state that any further application was made to the court on the part of the plaintiff with reference to the interrogatories, or that any order of the court ever was made with reference to them, other than the orders above recited.   The bill concludes with these words: " The plaintiff being aggrieved by the rulings of the court duly excepted and prays that these exceptions may be allowed."

The purpose of the attempt on the part of the plaintiff to get further answers was to compel the defendant to disclose the contents of a certain report of the accident signed by the conductor and the motorman of the car containing an account of the accident and the names of persons who were present.   The existence of such a report had been disclosed in the answers filed on July 16, 1902.   The motion of July 23 asked that the defendant be compelled to file a copy of the report or allow the plaintiff's attorneys a reasonable opportunity to inspect the original.

The plaintiff's brief states that the judge who passed upon this motion refused to order the defendant's president to allow the plaintiff to see the report, and refused to order the defendant to give the plaintiff the names of the motorman, the conductor or of the passengers.   This statement is not borne out by the

record. On the contrary, the judge ruled that no reason appeared why the defendant should not fully answer the interrogatories, and gave leave to file further answers. At no time was there a ruling that the defendant need not disclose the report. The only orders of the court upon the matter were orders either directing or giving leave to the defendant to file further answers, and after the final answers were so filed the plaintiff made no further application to the court, and proceeded to trial without such application.

It is well settled that orders allowing the party interrogated leave to file further answers, or further time in which to answer, are within the discretion of the court. *Harding* v. *Noyes*, 125 Mass. 572. See also *Stern* v. *Filene*, 14 Allen, 9 ; *Hancock* v. *Franklin Ins. Co.* 107 Mass. 113 ; *Harding* v. *Morrill*, 136 Mass. 291 ; *Fels* v. *Raymond*, 139 Mass. 98, 101. For this reason no exception lay to any order stated in the bill of exceptions. Nor was there any error in the rulings made in the memorandum of decision accompanying the order of October 6, 1902. The first ruling, that on the face of the papers no legal reason appears why the defendant should not fully answer the questions was in the plaintiff's favor. The other, that the plaintiff was entitled to the oath of the party interrogated that the matters inquired of are within the protection of the R. L. c. 173, § 63, and that this should be fully stated in the answers was correct. *Hobbs* v. *Stone*, 5 Allen, 109, 110. But as the question whether the plaintiff had the right to compel a disclosure of the report which was in the possession of the defendant has been argued by both parties and is of some practical importance we will dispose of it.

It is idle to contend that the report, as a document, is material to the plaintiff's case. The answers given disclose the fact of its existence, that it is signed by the conductor and motorman of the car, that it contains an account of the accident and furnishes a list of names and addresses of persons who were witnesses to the accident, and that it states that the accident happened on car 1456 on route 728, opposite 328 Massachusetts Avenue, at 8.42 A. M. on February 7, 1902, and that the report contains information material to the defence of the case and also the names of the defendant's witnesses.

The statute provides that "the party interrogated shall not be obliged . . . to disclose the names of the witnesses by whom, or the manner in which, he proposes to prove his own case." R. L. c. 173, § 63.   The party interrogated cannot be compelled to get up the case of the other party for him, nor to disclose his own case.   *Gunn* v. *New York, New Haven, & Hartford Railroad*, 171 Mass. 417, 421.   *Robbins* v. *Brockton Street Railway*, 180 Mass. 51, 55.

It seems to us that to have compelled the defendant to file the report or to allow an examination of it by the plaintiff's attorneys, or to have compelled the defendant to have disclosed the account of the accident given in the report, or the statement given in it of the names and addresses of the persons who witnessed the accident would, as was said of certain questions considered in *Robbins* v. *Brockton Street Railway*, *ubi supra*, practically have been to compel the defendant to get up the plaintiff's own case, and practically to compel the defendant to disclose the names of the persons by whom and the manner in which it proposed to prove its own case.   Indeed the argument of the plaintiff is that knowledge on the part of her attorneys of the names of the motorman and the conductor and of the other persons who witnessed the accident would have helped in the preparation of her case.   We do not think the defendant could have been compelled properly to give her that information.

*First bill of exceptions sustained; second bill overruled.*