JOSEPH MARKO *v.* STOP AND SHOP, INC., ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, JS.

Argued June 4—decision released September 16, 1975

*Arnold J. Bai,* with whom, on the brief, was *Stephen W. Leermakers,* for the appellant (defendant Owens-Illinois, Inc.).

*Paul L. Blawie,* with whom was *James E. Barry, Jr.,* for the appellee (plaintiff).

BOGDANSKI, J. This is an appeal from an action by the plaintiff to recover damages for personal injuries alleged to have been caused by the explosion of a bottle of carbonated soda. The action was initially brought in ten counts against the defendants Owens-Illinois, Inc., the manufacturer of the bottle, Cott Corporation, the bottler of the beverage, and Stop & Shop, Inc., the retailer. The case was submitted to the jury only on counts sounding in strict tort liability against each of the three defendants. The jury returned verdicts for the plaintiff against the defendant Owens-Illinois and in favor of the defendants Cott and Stop & Shop. From that judgment Owens-Illinois has appealed, claiming error in the trial court's denial of its motion to set aside the verdict, in rulings on evidence, and in the charge to the jury.

The preliminary statements of facts contained in the parties' briefs pursuant to §§ 631A and 632A of the Practice Book reveal the following undisputed facts: On June 27, 1969, the plaintiff purchased a carton of eight, ten-ounce, nonreturnable glass bottles of cola from a Stop & Shop store in Norwalk. The plaintiff took the carton of cola home and carried it down to his basement where he had a bar and refrigerator. He placed the carton on the edge of the bar and began opening it by tearing the cardboard paper top. When the carton was ripped almost all the way through, the plaintiff heard an explosion and a piece of glass from one of the bottles in the carton flew into his left eye. The plaintiff was immediately hospitalized, and the eye was surgically repaired but it later developed a traumatic cataract as a result of the laceration. Additional hospitalization was required seven

months later for removal of the cataract, and the plaintiff's doctor testified that the plaintiff is now permanently blind in the left eye. On the trial, it was the plaintiff's theory that the bottle exploded from internal pressure because of defects in the glass, while the defendants maintained that the bottle exploded because it was struck externally against a hard object.

The defendant Owens-Illinois first claims that the trial court erred in refusing to set aside the verdict as unsupported by the evidence. More precisely, it is asserted that the plaintiff failed to prove the existence of any defect in the bottle which proximately caused his injury. We need not review all of the elements required to make out a prima facie case in strict tort liability against the manufacturer or seller of defective goods. Those elements are clearly stated in § 402 A of volume 2 of the Restatement (Second) of Torts, which we adopted in *Garthwait* v. *Burgio,* 153 Conn. 284, 289, 216 A.2d 189, and *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 559, 227 A.2d 418. It is sufficient to note that the plaintiff must show not only that the product was in a defective condition unreasonably dangerous to the user, the consumer or his property but also that the plaintiff's injury was proximately caused by that defect in the product.

The defendant Owens-Illinois relies on the testimony of its expert witness that his examination of the fragments of the bottle in question revealed no defects in the manufacture or structure of the bottle; that those fragments after being reassembled revealed a classic impact type fracture; and that it was reasonably probable that the bottle failed as a result of being struck by or striking

against a hard object with a severe blow. Owens-Illinois also points out that the hospital record in evidence discloses that a nurse in the emergency room recorded the cause of the plaintiff's injury as follows: "Soda bottle fell & pieces flew into lt. eye."

On the other hand, the plaintiff produced expert testimony that the bottle in question was manufactured by the defendant Owens-Illinois; that it failed as a result of a rupture from internal pressure, not external impact; that the probable reason for the rupture was an internal strength failure; that there was a tremendous variation of glass wall thickness which rendered the bottle defective when it left the Owens-Illinois factory; and that it was reasonably probable that the bottle failed because it could not withstand the internal pressure produced by the natural carbonation of the cola under a reasonable degree of handling that it would undergo in the trade. The plaintiff's own testimony was that the bottle exploded while it was resting in the carton on the bar, and the same hospital records relied on by the defendant contain the following notation made by the plaintiff's attending physician in his discharge summary: "In reading the chart, this is to advise that the nurse's note in the emergency room is incorrect regarding the history of the accident. The bottle did not drop, but spontaneously exploded while in a resting position."

In reaching their verdict and in responding to interrogatories submitted pursuant to § 247 of the Practice Book, the jury concluded from the evidence that the subject bottle was manufactured by Owens-Illinois; that there was a defect in the bottle that existed at the time it left the possession of Owens-

Illinois; that the bottle was in substantially the same condition when it reached the hands of the ultimate consumer as it was in when it left the hands of Owens-Illinois; and that the defect in the bottle was the proximate cause of the injuries sustained by the plaintiff.

The jury reasonably could have reached those conclusions on the basis of the evidence and reasonable inferences to be drawn therefrom. "It is the province of the jury to weigh the evidence and determine the credibility and the effect of testimony; and we must decide the question whether on the evidence presented, the jury could have fairly reached their verdict . . . . *Hanauer* v. *Coscia,* 157 Conn. 49, 53, 244 A.2d 611." *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 359, 294 A.2d 305. " 'For the attack on the court's refusal to set aside the verdict to succeed, it must appear that the evidence furnished no reasonable basis for the jury's conclusion . . . . The jury were confronted with conflicting evidence at every point. The choice of the more credible evidence was for them to make. *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596.' *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499, 208 A.2d 748." *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 561, 316 A.2d 394. There was no error in the trial court's refusal to set aside the verdict as unsupported by the evidence.

Owens-Illinois next claims that the verdict was contrary to law, arguing that it was legally inconsistent for the jury to have found for the plaintiff against Owens-Illinois, the manufacturer, but to have exonerated Cott, the bottler, and Stop & Shop, the retailer. Owens-Illinois points out that the jury found there was a defect in the bottle when it left

the control of the manufacturer; that the plaintiff's theory against all those defendants was based on strict tort liability; and that under that theory, all subsequent sellers of the defective bottle, be they bottlers, wholesalers or retailers, would also be liable to the plaintiff if the manufacturer were properly found liable. It is true that manufacturers, wholesalers, and retailers who sell a defectively manufactured product are ordinarily jointly and severally liable to a consumer or user injured as a result of the defect. Restatement (Second) 2 Torts § 402 A, comment f; 63 Am. Jur. 2d, Products Liability, §§ 145–48. Liability is imposed on the successive sellers, not because they caused the defect, but merely because they sold the defective product. *Bialek* v. *Pittsburgh Brewing Co.*, 430 Pa. 176, 188, 242 A.2d 231. It would appear, therefore, that the jury took an inconsistent position in finding against Owens-Illinois but in favor of Cott and Stop & Shop.

Ordinarily, a verdict placing liability on one defendant which is inconsistent, under the facts of the case, with a finding of no liability on the part of another defendant is improper and will be set aside. *Fabrizi* v. *Golub*, 134 Conn. 89, 94, 55 A.2d 625; 89 C.J.S. 167, Trial, § 500. Unlike the *Fabrizi* case, supra, however, interrogatories were submitted to the jury, and the responses to those interrogatories leave no doubt that the jury correctly applied the law in reaching their verdict against Owens-Illinois. Moreover, the forms of the verdict which permitted the jury to come to their apparently inconsistent verdict were approved by all counsel and no objection was made to the court's instruction which permitted the jury to render a verdict against any one or more of the defendants. Under those

circumstances it would be manifestly unfair to the plaintiff to set aside the verdict against Owens-Illinois. If the jury's verdict had been consistent, it would have been against all three defendants, jointly and severally, according to the undisputed facts and the conclusions set forth in the responses to the interrogatories. The plaintiff could then have looked to any of the defendants to satisfy his damages. *Rose* v. *Heisler,* 118 Conn. 632, 633, 174 A. 66. It is the plaintiff, not Owens-Illinois, who was harmed by the verdict for the other two defendants, and, while the plaintiff did initially move to set aside the verdicts for Cott and Stop & Shop, he abandoned that effort and has chosen to accept the judgment absolving those two defendants. It follows that Owens-Illinois is in no position to complain of the inconsistent verdicts and that, under the facts of this case, the trial court did not err in refusing to set aside the verdict on those grounds. See generally *Fox* v. *Fox,* 168 Conn. 592, 594, 362 A.2d 854.

In final argument, the plaintiff's counsel referred to large corporations as wanting "to keep the consumer limited so they could make higher profit and use less glass in their bottles." He then went on to ask the jury whether they were "going to strike a blow for consumers' protection and for all of us that work for a living," or whether they were "going to let Owens-Illinois, with all their plants and their multi-worldwide operations get bigger?" Counsel for Owens-Illinois interrupted and objected to that line of argument as "inflaming passions." The court noted the objection and permitted the plaintiff's counsel to continue with his argument. Counsel for Owens-Illinois took no exception to the court's response to the objection nor did he move

for a mistrial. Owens-Illinois now suggests that those remarks prejudiced the jury and require that the verdict against it be set aside.

In considering that aspect of the motion to set aside the verdict, the trial court was convinced that any possibility of prejudice resulting from the emotional argument of the plaintiff's counsel was eliminated by the following instruction to the jury: "Now, I might add here that you are dealing with corporations as defendants and you have an individual plaintiff, and corporations act through their agents, servants and employees, and it's not expected that the corporation will act in its corporate capacity except through its agents, servants and employees. Now, in a case in which corporations are involved, I would like to caution you, also, that there should be no antagonism or prejudice against a defendant corporation because it is a corporation, and . . . [no] favoritism shown on that account to an individual plaintiff. We have the inference that corporations are big and wealthy and, therefore, it ought to be made to pay. That is not the law, and I caution you against it. The case is to be decided on the principles which I have attempted to explain to you."

While the remarks of the plaintiff's counsel regarding large corporations were inappropriate, it cannot be said that they so far exceeded the bounds of fair comment and legitimate argument as to require setting aside the verdict as a matter of law. Compare *Bryar* v. *Wilson*, 152 Conn. 162, 164–65, 204 A.2d 831, with *Meadows* v. *Vigneault*, 152 Conn. 708, 709, 206 A.2d 840. The trial court's ruling on a motion to set aside the verdict is entitled to great weight. *Darling* v. *Burrone Bros., Inc.*, 162

Conn. 187, 200, 292 A.2d 912. "From the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, upon the printed record, what factors, if any, could have improperly influenced the jury. *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216; *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895; *Loomis* v. *Perkins,* 70 Conn. 444, 447, 39 A. 797." *Butler* v. *Steck,* 146 Conn. 114, 119, 148 A.2d 246. Furthermore, the court's cautionary instruction to the jury was sufficient to obviate any possibility of prejudice resulting from the remarks of the plaintiff's counsel regarding the size and profit motive of multinational corporations. See *Vachon* v. *Ives,* 150 Conn. 452, 456, 190 A.2d 601. In the absence of any exception taken or motion for a mistrial, we cannot say that the court's response amounted to an abuse of discretion constituting reversible error. *Weller* v. *Fish Transport Co.,* 123 Conn. 49, 61, 192 A. 317. The trial court did not abuse its discretion in refusing to set aside the verdict on the ground that counsel's argument was improper.

Owens-Illinois next challenges a court ruling which refused its counsel permission to examine a copy of a written report made by Russell Eversole, the plaintiff's expert witness. The evidence printed in the appendices to the briefs reveals that no prior motion for disclosure and production of that report was made; see Practice Book § 167; that the request for production of the report was first made during cross-examination of Eversole; and that he had thus far testified on the basis of his own memory and had not used the written report to refresh his recollection regarding the procedure and results of his tests on the subject bottle fragments. Counsel for Owens-Illinois claimed that he

should be allowed to examine the report in order to ascertain "the underlying facts" upon which Eversole based his conclusions, and to determine whether there were any inconsistencies between the report and his direct testimony. In denying that request, the trial court properly pointed out that counsel could freely cross-examine the witness on the underlying facts. And, after examining the report, the trial court informed counsel that there was nothing in the report that was inconsistent with Eversole's previous testimony.

"The court had the right and duty to exercise a sound discretion in allowing or refusing the inspection of . . . [the] report under the rule of cases such as *Banks* v. *Connecticut Ry. & Lighting Co.,* 79 Conn. 116, 118, 64 A. 14, and *Hurley* v. *Connecticut Co.,* 118 Conn. 276, 284, 172 A. 86." *Liebman* v. *Society of Our Lady of Mount St. Carmel, Inc.,* 151 Conn. 582, 586, 200 A.2d 721. In the exercise of that discretion, the report "should not be subjected to the inspection of opposing counsel unless it serves some legitimate purpose, such as refreshing the recollection of the witness, or contradicting his testimony. . . . It should not be submitted to opposing counsel if the court is satisfied that . . . [he] is merely on a 'fishing expedition' to procure evidence. *Katz* v. *Richman,* . . . [114 Conn. 165, 171, 158 A. 219]; *Spinney* v. *Boston Elevated Ry. Co.,* 188 Mass. 30, 37, 73 N.E. 1021." *Hurley* v. *Connecticut Co.,* 118 Conn. 276, 284, 172 A. 86. Since the trial court found no inconsistencies between the report and the witness' testimony, there was no abuse of discretion in denying Owens-Illinois' motion to inspect the report.

The claims of error directed at rulings on demonstrative evidence and reconstruction of the bottle

fragments have been considered and found to lack merit. It is sufficient to note that those rulings neither restricted the development of the defense theory nor cut short the efforts of Owens-Illinois to introduce expert testimony; see *Donch* v. *Kardos,* 149 Conn. 196, 202, 177 A.2d 801; that the "admission of evidence of experiments, demonstrations, or tests . . . rests in the sound discretion of the trial court"; *State* v. *Vennard,* 159 Conn. 385, 395, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625; and that Owens-Illinois has failed to sustain its burden of showing that the trial court abused its discretion.

The remaining claims of error are directed at the court's charge to the jury. Owens-Illinois asserts that the trial court improperly restricted the jury in its consideration of a nurse's entry in the plaintiff's hospital records which stated that his injury occurred when a "[s]oda bottle fell." The trial court cautioned the jury that there was no direct evidence as to who made that statement to the nurse, and then it instructed them that if they believed the statement was made by the plaintiff it could be regarded as an admission. It should initially be pointed out that a hospital record as a whole is not necessarily admissible for all purposes or as proof of all facts found therein. *Temple* v. *F. W. Woolworth Co.,* 167 Conn. 631, 633, 356 A.2d 880. " 'The real business of a hospital is the care and treatment of sick and injured persons. It is not to collect and preserve information for use in litigation. Accordingly, even though it might be the custom of a hospital to include in its records information relating to questions of liability for injuries which had been sustained by its patients, such entries . . . would not be made admissible

by the statute unless they also contained information having a bearing on diagnosis or treatment.' *D'Amato* v. *Johnston,* 140 Conn. 54, 61, 97 A.2d 893." *Kelly* v. *Sheehan,* 158 Conn. 281, 285, 259 A.2d 605. Nevertheless, the hospital record in this case was introduced into evidence in its entirety as a full plaintiff's exhibit. "As far as is disclosed . . . , the statements were admitted as full exhibits without objection or limitation. Since they were so admitted, they were in the case as hearsay evidence and were available, in proof of the matters stated therein, for whatever they were worth on their face." *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742. Nowhere in the record, however, is the source of the nurse's information identified; see *Kelly* v. *Sheehan,* supra, 286; and, the subsequent "correction" of that entry by the plaintiff's physician casts further doubt on the reliability of the statement. See *Stitham* v. *LeWare,* 134 Conn. 681, 685, 60 A.2d 658.

We need not decide whether it was proper to permit the jury to consider the statement as an admission by the plaintiff. Once that had been done, however, it was clearly not improper to instruct the jury that they would have to find that the plaintiff made the statement to the nurse before it could be regarded as an admission. "It is not only the right but often the duty of the trial court to comment upon the evidence." *Quednau* v. *Langrish,* 144 Conn. 706, 710, 137 A.2d 544. The court did no more than caution the jury on the use of inherently unreliable evidence, leaving them free to decide the issues of fact. "Viewed in this light, it was not unlike comments on the credibility of witnesses which have been considered by us in other cases, and under the circumstances of this case the

comment was not improper or harmful. *Nicewicz* v. *Nicewicz,* 104 Conn. 121, 123, 132 A. 399; *Bredow* v. *Woll,* 111 Conn. 261, 263, 149 A. 772; *Moyles* v. *Connecticut Co.,* 115 Conn. 80, 84, 160 A. 307; *Kast* v. *Turley,* 111 Conn. 253, 257, 149 A. 673; *Crotty* v. *Danbury,* 79 Conn. 379, 387, 65 A. 147; Maltbie, Conn. App. Proc. (2d Ed.) §§ 99, 100." *Quednau* v. *Langrish,* supra, 713.

Owens-Illinois also claims that the trial court failed properly to charge the jury that the plaintiff had the burden of proving that his injuries were caused by a defect in the bottle. A review of the court's original and supplemental charges to the jury disposes of that claim. At various times the jury were instructed that "the unreasonably dangerous defect or condition must be shown to have caused the injuries to the plaintiff"; that "you are to determine what caused the alleged explosion and if the explosion was a proximate cause of the injuries to the plaintiff"; that "the plaintiff has the burden of proving to you, by a fair preponderance of the evidence . . . [that] the product, because of its defect, caused physical harm to the user or consumer"; and that "you will have to determine that the dangerous condition, an unreasonably dangerous condition, if you find it to exist, was a proximate cause of not only the incident but the injuries which . . . [are] claimed to have ensued." After the latter statement, the court defined "proximate cause" for the jury. It is obvious that the jury were fully apprised of their duty regarding the issue of proximate cause.

There is no error.

In this opinion LOISELLE, MACDONALD and LONGO, Js., concurred.

564

HOUSE, C. J. (dissenting). I agree with the majority opinion except that portion dealing with the argument of the plaintiff's counsel to the jury. In my opinion, counsel's argument was so grossly improper that the judgment should be set aside and a new trial ordered.

The import and impact of the objectionable portion of the argument can best be understood by reading it in its entirety.[1]

Although the court did, as the majority opinion states, because of the defendant's objection, instruct the jury that they should have no prejudice against a defendant corporation and that it is not the law that "corporations are big and wealthy and, therefore, it [sic] ought to be made to pay," the court made no comment whatsoever about counsel's highly prejudicial and improper solicitations to the jury to "strike a blow for consumers protection and for all of us that work for a living" and not to

---

[1] During final argument by Attorney Blawie, the following transpired:

"Mr. Blawie: May it please the Court and ladies and gentlemen of the jury: I'm reminded of how when the consumers had cases against some of the automobile manufacturers, how they were met tooth and nail with any claim that there were any defects in the cars. You see, you don't hear about bottles being recalled, because by their very nature, you can't recall a defective bottle. It either breaks and no one is hurt, or it explodes and no one is around. Once in awhile you get a poor guy like Joe Marko, he brings it home, it explodes, assuming that it exploded. You don't read about it because you cannot then recall the entire lot number so and so, because you will be met with a vigorous and impassionate defense by the best experts money can buy, by the best talent they can hire, to come in here and tell you that. You know, these large corporations are in business for a profit and have a soul that's incomprehensible. They don't even admit it's their bottle for a week, and now they come in and they want you to follow the law and do justice, and their idea of justice is to turn out Joe Marko. They wouldn't let you even listen to my expert tell you. Or else they would have had my expert tell you about it otherwise. And they wouldn't want

let "Owens-Illinois, with all their plants and their multi-worldwide operations get bigger." The court's only response to the defendant's protest against that inflammatory and "highly improper argument" was "I'm going to permit Mr. Blawie to go forward." The court should have admonished counsel and then and there instructed the jury to disregard the improper argument—as did the court in somewhat similar circumstances in *Weller* v. *Fish Transport Co.*, 123 Conn. 49, 192 A. 317. See A-105 Rec. & Briefs 375.

As the majority opinion points out, the jury rendered inconsistent verdicts, holding only Owens-Illinois liable and exonerating the bottler and retailer defendants. Under these circumstances, it cannot be held that the improper argument of counsel directed against Owens-Illinois was harmless.

The case should be remanded for a new trial.

you to know that. This man wouldn't. Owens-Illinois kept out his testimony. Owens-Illinois kept out his report—

Mr. Bai: I'm going to object, if the Court please. And if the Court ruled it out, that's not arguable.

The Court: The jury will be instructed.

Mr. Bai: Thank you.

Mr. Blawie: They're the ones that want to confuse. They're the ones that want to keep the consumer limited so they could make higher profit and use less glass in their bottles. Isn't that what this case turned out to be? Are you going to let them go and get away with it? You going to strike a blow for consumers' protection and for all of us that work for a living, or are you going to let Owens-Illinois, with all their plants and their multi-worldwide operations get bigger?

Mr. Bai: I think that's highly improper argument. I hesitate to interrupt, but I think I must.

Mr. Blawie: This is the second time you interrupted, for a man that is hesitant.

The Court: I'm going to permit Mr. Blawie to go forward.

Mr. Bai: I think that's just inflaming passions.

Mr. Blawie: It hurts. It hurts when they hear it, but it's the truth. They wouldn't even admit it was their bottle. Remember the proof I had to go through to prove it was their bottle."