[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE
This is a foreclosure action wherein the plaintiff, Fleet CT Page 2965 Bank, a banking corporation organized and existing under the laws of the United States, seeks to foreclose, in two separate counts, a mortgage executed by the defendant, Sandra E. Polites, and a mortgage executed by the defendant, Rocky Hill Tennis Club, Inc. (RHTC). The plaintiff now seeks to strike various special defenses raised by the defendants.
On August 28, 1986, Denis and Kathleen Richards, and the defendants James E. Polites, Sandra E. Polites and Francis Sablone executed a promissory note for $450,000.00. Also on August 28, 1986, the defendant Rocky Hill Tennis Club, Inc. ("RHTC") signed an accommodation note, thereby becoming an accommodation maker on the promissory note executed by the above named individuals. On May 12, 1989, the defendant James Pasquini signed an agreement as guarantor for the indebtedness of the defendants James and Sandra Polites and Francis Sablone.
In the first count of the complaint, the plaintiff seeks to foreclose a mortgage with an unpaid balance in the amount of $276,988.34, which mortgage was executed on September 5, 1986 by Sandra Polites to secure the note. This mortgage covers a parcel of land located in Rocky Hill, Connecticut and known as 215 Anne's Way Court. In the second count the plaintiff seeks to foreclose a mortgage, also with an unpaid balance in the amount of $276,988.34, which was executed on September 8, 1986 by the defendant RHTC to secure the note. This mortgage covers a parcel of land also located in Rocky Hill, Connecticut and known as 1000 Elm Street. Both mortgage deeds were conditioned upon the payment of the promissory note, which now is in default.
On November 21, 1991, the defendants James E. Polites and Sandra E. Polites filed their answer and two special defenses. In their first special defense the Polites allege that the plaintiff should be estopped from proceeding under the promissory note on the ground that an oral agreement existed between the plaintiff and the makers of the note that the note would be restructured if any payment problems developed. In their second special defense the defendants James and Sandra Polites allege that it is inequitable, as well as commercially unreasonable or unconscionable, to pursue judgment independently against them only, as opposed to all the makers of the note. The plaintiff has filed a motion to strike both special defenses of the defendants James and Sandra Polites. The plaintiff moves to strike the first special defense because it fails to allege any intentional or grossly negligent conduct on the part of the plaintiff, and the plaintiff moves to strike the second special CT Page 2966 defense because the defendants' duty to pay, as makers on the note, is absolute and unconditional.
The function of the motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton, 212 Conn. 138, 142 (1989); Mingachos v. CBS, Inc.,196 Conn. 91, 108 (1985). A motion to strike admits all facts well pleaded but does not admit the truth or accuracy of opinions or legal conclusions stated in the pleadings. Mingachos v. CBS, Inc., supra, 108. In ruling on a motion to strike the court is limited to the facts alleged in the complaint, and those facts must be construed in the manner most favorable to the plaintiff. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170
(1988); Meredith v. Police Commission, 182 Conn. 138, 140
(1980). If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied.
The first issue is whether, in an action on a promissory note, the maker of the note can raise a defense of equitable estoppel based upon the maker's claim that there existed an oral agreement to restructure the note if payment problems developed.
"As between the original parties. . . a promissory note is nothing more than a written contract for the payment of money." Appliances, Inc. v. Yost, 181 Conn. 207, 210 (1980). "Since the note [is] a contract, the fundamental rules governing contract law are applicable." Id., 211.
A promissory note may be modified by an oral agreement between the parties, but absent clear proof of the existence of such an agreement, the plain meaning of the words and terms in the promissory note is the final word on the rights of the parties. See Dinado v. Gelormino, 2 Conn. App. 275, 277 (1984) (in an action on a promissory note the defendant raised as a special defense the oral modification of the terms of the note; on appeal the appellate court ruled that the trial court did not clearly err in finding that no oral agreement existed modifying the note, and that the note contained the entire agreement of the parties); see also Perl v. Case, 3 Conn. App. 111, 114
(1985) (in an action on a promissory note, the defendant raised as a special defense the oral modification of the agreement between the parties; on appeal, the appellate court affirmed the ruling of the trial court that the defendant was required to prove his special defense of oral modification by clear and convincing evidence).
The plaintiff moves to strike the first special defense on the ground that it fails to allege any intentional or grossly CT Page 2967 negligent conduct on the part of the plaintiff. In their first special defense the defendants James and Sandra Polites allege that they "executed the promissory note at issue herein in reliance on the inducements and assurances of the plaintiff that said note would be modified or restructured if payment problems developed." They further allege that they "relied on said inducements and assurances in the execution of said note and did not seek out other conventional financing." The Polites also allege that the plaintiff breached this agreement by calling the note on demand without restructuring or modifying the demand aspect of the note. When viewing the pleading most favorably to the pleaders, the alleged oral agreement between the plaintiff and the defendants Polites can be construed as an agreement or promise creating certain rights or duties. In ruling on the motion to strike, a trial court is limited to considering the grounds specified in the motion. Meredith v. Police Commissioners, 182 Conn. 138, 140 (1980).
"`Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed. . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." Bozzi v. Bozzi, [177 Conn. 232,] 241 [, 413 A.2d 834 (1979)]." Brock v. Cavanaugh, 1 Conn. App. 138,141-142 (1984). The state supreme court has stated that:
 "`Under our well-established law, any claim of estopel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.' Bozzi v. Bozzi, 177 Conn. 232, 242, 413 A.2d 834 (1979); Dupuis v. Submarine Base Credit Union, Inc., [170 Conn. 344, 353, 365 A.2d 1093 (1976);] Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 53-54, 184 A.2d 797 (1962). Zoning Commission v. Lescynski, [188 Conn. 724, 731, 453 A.2d 1144 (1982)]." Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 148, 527 A.2d 679 (1987).
(Emphasis added). O'Sullivan v. Bergenty, 214 Conn. 641, 648
(1990). The defendants Polites in their first special defense have alleged facts which raise the defense of estoppel. We should note that while "[e]stoppel requires[s] proof of CT Page 2968 misleading conduct by one party resulting in detrimental reliance by the other;" Edart Truck Rental Corporation v. B. Swirsky Co., 23 Conn. App. 137, 141, 579 A.2d 133 (1990), quoting Hunt v. Friedman, 6 Conn. App. 720, 722, 507 A.2d 498
(1986); "[t]he notion that an equitable estoppel requires proof of actual intention to mislead or a deceitful purpose has been expressly rejected in this state. . . . `Neither actual fraud nor bad faith is generally considered an essential element.'" (Citation omitted). Steinegger v. Fields, 37 Conn. Sup. 534,538 (1980), quoting 28 Am.Jur.2d Estoppel and Waiver 43. Contrary to the assertion made by the plaintiff, the allegation of gross negligence is not an essential requirement for the purposes of raising the defense of estoppel. "`Whatever the motive may be, if one so acts or speaks, that the natural consequences of his words and conduct will be to influence another to change his condition, he is legally chargeable with an intent, a wilful design to induce the other to believe in him, and to act on that belief if such proves to be the actual result'. . . . (Citation omitted). Id., quoting Preston v. Mann,25 Conn. 118, 127-128 (1856).
It is axiomatic that "[t]he Uniform Commercial Code, General Statutes 42a-1-101 et seq., applies to transactions involving promissory notes. General Statutes 42a-1-201 (19)." Phillippe v. Thomas, 3 Conn. App. 174, 175 (1985). "[T]he doctrines of waiver and estoppel. . . are available defenses under the Uniform Commercial Code. General Statutes 42a-1-103, 42a-1-107, 42-2-209; Mercanti v. Persson, 160 Conn. 468, 477-479,280 A.2d 137; see 1 Anderson, Uniform Commercial Code (2d Ed.)1-103:31, 1-103:51." (Emphasis added). Multiplastics, Inc. v. Arch Industries, Inc., supra 285. General Statutes42a-1-103 provides in pertinent part that "[u]nless displaced by the particular provisions of this title, the principles of law and equity, including. . . estoppel. . . shall supplement its provisions." (Emphasis added). See, e.g., Bank of Boston v. Platz, 41 Conn. Sup. 587 (1991, Satter, J.) (in foreclosure action arising from nonpayment of promissory note, defendant asserted as one of his special defenses that the plaintiff was estopped to seek a deficiency judgment because of plaintiff's failure to notify defendant of a decrease in the loan to value ratio, as required by the note; in ruling on the plaintiff's motion to strike the special defense of estoppel the trial court held that the defendant was entitled to interpose that special defense in their answer and thereby denied the motion to strike as to the special defense of estoppel); Connecticut Bank Trust v. Fulton, 4 CTLR 81, 82 (June 3, 1991, Leuba, J.) (in action on a promissory note, defendants' first special defense alleged that the acceptance by the plaintiff of late payments on the note modified the terms of the note; defendants' second special defense alleged that the plaintiff's acquiescence and CT Page 2969 acceptance of the late payments induced the defendants to continue making late payments and that as a result the plaintiff was estopped from enforcing the terms of the note; the trial court granted the plaintiff's motion for summary judgment on fact-specific grounds: i.e., the note contained a non-waiver clause which defeated the defendants' argument that the note was modified by the inconsistent conduct of the plaintiffs).
Based upon the foregoing, the defendants James and Sandra Polites, as makers of the promissory note in question, have pleaded facts which raise the defense of equitable estoppel based upon their claim that an oral agreement existed between the makers and the plaintiff bank to restructure the note and forbear from making demand if payment problems arose. Under these circumstances, the plaintiff's motion to strike the first special defense of James and Sandra Polites is denied.
As to the second issue, the plaintiff also moves to strike the second special defense on the ground that the defendants, as makers of the note, have an unconditional and absolute duty to pay the note according to its terms. In their second special defense, the defendants James and Sandra Polites allege that "[o]n or about October 28, 1991, the plaintiff elected to pursue judgment independently against the defendants, James E. Polites and Sandra E. Polites, to the exclusion of other defendants." Second Special Defense, para. 4. The defendants Polites further allege that "[s]aid election is inequitable and commercially unreasonable and to allow said action in this case would be unconscionable." Id., para. 5. The gravamen of the defendants Polites' argument is that because the Uniform Commercial Code, General Statutes 42a-1-203, provides that "every contract or duty within this title imposes an obligation of good faith in its performance or enforcement," the plaintiff's actions in proceeding independently against the defendants Polites are commercially unreasonable and inequitable and violate the "good faith" requirement imposed upon the plaintiff by the UCC.
The Uniform Commercial Code, General Statutes 42a-3-413 (1) provides that "[t]he maker or acceptor engages that he will pay the instrument according to its tenor at the time of his engagement or as completed pursuant to section 42a-3-115 on incomplete instruments." General Statutes 42a-3-118 (e) provides that "[u]nless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or endorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as `I promise to pay.'" (Emphasis added). See, also, Monson v. Drakeley, 40 Conn. 552 (1873). In Rosa v. Colonial Bank,207 Conn. 483, 493 (1988), our Supreme Court stated that "It is undisputed that the plaintiff [as] a co-maker of the note. . . is CT Page 2970 jointly and severally liable for this obligation. [The bank is] entitled to sue any of the co-makers for the entire obligation because they were jointly and severally liable. See Marko v. Stop Shop, Inc., 169 Conn. 550, 557, 364 A.2d 217 (1975)." (Emphasis added). Id.
Since the liability of the defendants Polites is joint and several as to all the makers, the plaintiff bank may proceed to judgment against any or all of the co-makers without having violated the good faith requirement contained within the provisions of the UCC. We find that the second special defense fails to state facts that if proven, would defeat the plaintiff's claim.
Accordingly, plaintiff's motion to strike the defendant Polites second special defense is granted.
Turning to the mortgage of RHTC, this mortgage was given to recover an accommodation note executed by the defendant Francis R. Sablone, Jr., as president of RHTC.
The defendant, RHTC filed its answer setting forth four special defenses; (1) that it did not agree or authorize the execution of the mortgage note; (2) that it received no consideration for the mortgage note; (3) that it was an "accommodation maker" and should be pursued only after the plaintiff exhausts its remedies against the maker of the note; and (4) that its liability has been discharged due to the plaintiff releasing two of the five primary parties from liability on the note.
The plaintiff has moved to strike RHTC's special defenses for failure to state a claim upon which relief may be granted.
RHTC has claimed that its president was not authorized to sign the accommodation note binding the corporation.
Although the plaintiff cites the correct law that a corporate president has the power to bind the corporation by executing a corporate note and mortgage the corporate property to secure the note (see Lettieri v. American Savings Bank,182 Conn. 1, 12 (1980), the issue raised by the special defense is whether, in fact, the president was granted specific authority to execute the note and mortgage deed in favor of the plaintiff. Id. p. 7. "Whether a corporate officer is authorized to act on behalf of a corporation is a question of fact to be resolved by the trier." Czarnecki v. Plastics Liquidating Co., 179 Conn. 261,268 (1979). By denying the authority of the president to bind RHTC as an accommodating party, RHTC has raised a question of fact, as a basis for its defense. Id. CT Page 2971
The second special defense of RHTC is lack of consideration for an accommodation note. The defendant has not briefed the plaintiff's motion to strike this defense. Lack of consideration for an accommodation note is not a defense. See Connecticut General Statutes 42a-3-415; Seaboard Finance Company of Connecticut, Inc. v. Dorman, 4 Conn. Cir. Ct. 154 (1966). In Seaboard Finance, the court found that a wife signed a note for the purpose of lending her name to her husband was liable as an accommodation maker regardless of the lack of consideration. Id. at 156. "[A]n `accommodation endorser' is one who endorses without receiving value therefore, and for the purpose of lending his name to some other person." Knapp v. Tidewater Coal Co., 85 Conn. 147, 151 (1912).
The third special defense raised by RHTC has also not been briefed by RHTC. The third special defense raised the issue of whether or not the accommodation maker should be pursued until all remedies against the maker of the note have been exhausted. The obligation of an accommodation maker as to the creditor is a primary obligation. See Connecticut General Statutes42a-3-414. If the accommodation maker pays the debt or is held responsible, it becomes an issue of subrogation against the primary party. Savings Bank of Manchester v. Kane, 35 Conn. Sup. 82,87 (1978); Foster v. Balch, 79 Conn. 449, 451 (1907); see Connecticut General Statutes, 42a-3-415 (5).
As to the fourth special defense RHTC alleges that two of the five primary parties have been released by the plaintiff, and for this reason its liability has been discharged. The plaintiff contends that RHTC's right of recourse against all of the primary parties has not been impaired when only two of the five have been released. The basic law is that "[a]n unqualified release of a principal debtor will discharge the surety." State ex rel. McClure v. Northrop, 93 Conn. 558, 566
(1918). However, in the present case, not all of the makers have been released. Connecticut General Statutes, 42a-3-606
provides that the holder discharges a party to the extent that the collateral against which any person has a right of recourse, has been unjustifiably impaired. See Catania v. Catania,26 Conn. App. 359, 366 (1992). The question of whether or not the surety has been impaired is a factual issue raised by RHTC's fourth special defense.
As to the defendant RHTC, the Motion to Strike the First Special Defense is denied. The Motions to Strike, the Second and Third Special Defenses are granted. The Motion to Strike the Fourth Special Defense is denied.
In summary, the plaintiff's Motion to Strike, CT Page 2972
a) The First Special Defense of the Polites is denied.
b) The Second Special Defense of the Polites is granted.
c) The First Special Defense of RHTC is denied.
d) The Second Special Defense of RHTC is granted.
e) The Third Special Defense of RHTC is granted.
f) The Fourth Special Defense of RHTC is denied.
ARONSON, JUDGE